# JLJ LAW

Law Office of Jennifer R. Louis-Jeune

**Jennifer R. Louis-Jeune**
**Kestine Thiele**

52 Duane Street, Floor 7
New York, New York 10007
T: 212. 203. 9058
F: 914. 219. 0958
JENNIFER@JLJLAW.COM
KESTINE@JLJLAW.COM

October 12, 2021

**By Email and ECF**
Honorable Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Russo, et al.*, 21 Cr. 466 (ARR)

Dear Judge Ross:

We write to respectfully move for Mr. Castellazzo's release. We represent Mr. Benjamin Castellazzo in the above-referenced matter, having been appointed as counsel pursuant to the provisions of the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, on September 14, 2021. In a multi-defendant indictment dated September 8, 2021, Mr. Castellazzo was charged with three counts of racketeering in violation 18 U.S.C. § 1962, two counts of Hobbs Act extortion conspiracy, one count of Hobbs Act extortion, and one count of attempted Hobbs Act extortion, in violation of 18 U.S.C. § 1951, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), one count of conspiracy to steal and embezzle health care benefits funds in violation of 18 U.S.C. § 371, and one count of conspiracy to commit health care fraud and one count of attempted health care fraud, in violation of 18 U.S.C. § 1349. At the time of Mr. Castellazzo's arrest and presentment on September 14, 2021, we made a bail application, which Magistrate Judge Merkel denied without prejudice to a future request for release on bail. *See* Transcript attached as Exhibit A.

As set forth in further detail below, the crimes Mr. Castellazzo is charged with do not provide a basis for detention under the Bail Reform Act (BRA). In fact, they do not provide a basis for a detention *hearing* under the BRA. Supreme Court precedent makes it unconstitutional for a court to hold a detention hearing or detain a defendant at all when, as here, there is no basis for detention under 18 U.S.C. § 3142(f). Because Mr. Castellazzo is not charged with an enumerated offense under § 3142(f)(1), and the government has failed to proffer any evidence that there is a "*serious risk* that [Mr. Castellazzo] will flee" or obstruct justice, Mr. Castellazzo is being detained in violation of the law. § 3142(f)(2)(A) (emphasis added). Accordingly, and particularly given how needless and cruel it is to incarcerate a man, presumed innocent, who is 84 years old and in poor health, at MDC Brooklyn during the global pandemic, we submit that the law demands his release.

## I. Applicable Legal Standards

The federal Bail Reform Act (the "BRA") presumes that defendants charged with crimes will be released. 18 U.S.C. § 3142(b). As recognized by the Supreme Court, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987); *see also United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. N. 98-225 at 7 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3189 ("Under the federal statutory scheme, "it is only a 'limited group of offenders' who should be [detained] pending trial").

The BRA specifically limits the circumstances under which a district court may order pretrial detention. A motion seeking such detention is permitted *only* when the charge is for certain enumerated crimes, 18 U.S.C. § 3142(f)(1) (crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or felonies committed by certain repeat offenders), or when there is a serious risk that the defendant will flee or obstruct justice. 18 U.S.C. § 3142(f)(2).

Following the Supreme Court's guidance in *Salerno*, six courts of appeals agree that it is illegal to hold a detention hearing unless the government invokes one of the factors listed in 18 U.S.C. § 3142(f). *See, e.g.*, *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Friedman*, 837 F.2d 48, 48–49 (2d Cir. 1988); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992); *United States v. Twine,* 344 F.3d 987 (9th Cir. 2003); *United States v. Singleton,* 182 F.3d 7, 9 (D.C. Cir. 1999). For example, the First Circuit holds: "Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists." *Ploof*, 851 F.2d at 11. The Fifth Circuit agrees. *See Byrd*, 969 F.2d at 109 ("A hearing can be held only if one of the ... circumstances listed in (f)(1) and (2) is present," and "[d]etention can be ordered, therefore, only 'in a case that involves' one of the ... circumstances listed in (f).") (quoting § 3142(f)).

Unfortunately, a practice has developed resulting in defendants being detained in violation of the BRA, *Salerno*, and the Constitution. Specifically, it is common for the government to seek detention at the initial appearance, as it did here, on the ground that the defendant is either "a danger to the community," "a risk of flight," or both.[1] Because neither "danger to the community" nor ordinary "risk of flight" is a factor listed in § 3142(f), it is flatly illegal to detain a person on such grounds. Further, it is illegal for a person to be detained unless an (f) factor is met.

---

[1] *See, e.g., The Administration of Bail by State and Federal Courts: A Call for Reform: Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 115th Cong. (Nov. 14, 2019), Written Statement of Alison Siegler at 8, https://docs.house.gov/meetings/JU/JU08/20191114/ 110194/HHRG-116-JU08-Wstate-SieglerA- 20191114.pdf (presenting Congress with court watching data demonstrating that federal prosecutors regularly violate the BRA by requesting detention at the Initial Appearance on the impermissible ground of ordinary—not serious—risk of flight and by failing to provide any evidence to support the request).

Danger to the community is not an applicable basis for detention in cases charging financial crimes. *See United States v. Friedman,* 837 F.2d 48, 49 (2d Cir. 1988); *see also United States v. Ploof*, 851 F.2d 7, 11–12 (1st Cir. 1988) ("[W]here detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1) . . . Insofar as in the present case there is no longer any contention that any of the subsection (f)(1) conditions were met, pre-trial detention solely on the ground of dangerousness to another person or to the community is not authorized."); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) ("[T]he statute does not authorize the detention of the defendant based on danger to the community from the likelihood that he will if released commit another offense involving false identification. Any danger which he may present to the community may be considered only in setting conditions of release."); *United States v. Morgan*, 2014 WL 3375028, at *5 (C.D. Ill. July 9, 2014) ("[W]here none of the factors set forth in § 3142(f)(1) are present, ... 'dangerousness' is only relevant for purposes of choosing which, if any, conditions accompanying an order of release are necessary to ensure the appearance of the defendant.).

The threshold question is whether any of the seven factors enumerated in the BRA for detention apply. If not, the issue before the Court is what conditions of release should be set, an analysis which turns on the nature and circumstances of the crime charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by release. 18 U.S.C. § 3142(g).

## II. The BRA Requires Mr. Castellazzo's Release on Bail

### A. None of the Factors for Detention Enumerated in the BRA Apply

Because this case does not meet any of the seven factors for detention enumerated in the BRA, Mr. Castellazzo's pretrial detention is unlawful. None of the five factors under § 3142(f)(1) are satisfied, as Mr. Castellazzo has not been charged with: (1) a crime of violence under (f)(1)(A); (2) an offense for which the maximum sentence is life imprisonment or death under (f)(1)(B); (3) a qualifying drug offense under (f)(1)(C); (4) a felony after conviction for two or more offenses under the very rare circumstances described in (f)(1)(D); or (5) a felony involving a minor victim or the possession/use of a firearm under (f)(1)(E). The government has also presented no evidence to establish that this case meets either of the two additional factors discussed in § 3142(f)(2): (1) a "serious risk that [the defendant] will flee" under (f)(2)(A); or (2) a "serious risk" that the defendant will engage in obstruction or juror/witness tampering under (f)(2)(B).

#### i. *Mr. Castellazzo Was Not Charged with a Crime of Violence Under § 3142(f)(1)(A)*

The government did not argue the presence of any § 3142(f) factor in this case because none exist. Under § 3142(f)(1), a motion seeking pretrial detention is permitted in cases

Law Office of Jennifer R Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958

involving a crime of violence. The BRA's definition of crime of violence is broken up into two clauses—the elements clause and the residual clause:

> (4) the term "crime of violence" means—
>
> > (A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force;
> >
> > (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or…

18 U.S.C. § 3156(a)(4)(A)–(B).

The label "racketeering," though pejorative, does not shed light on whether the activity in question poses, or fails to pose, a serious potential risk of violence. *United States v. Winter*, 22 F.3d 15, 19 (1st Cir. 1994). Racketeering comes in many shapes and sizes, and although those activities are uniformly nefarious, they are not necessarily violent, leaving courts with no real insight into whether a conviction bearing the label can be classified as a crime of violence. *Id.* Therefore, the government, in its detention memo, relied on its only credible, yet still weak, argument that in Mr. Castellazzo's case, the extortion predicates for the racketeering charges under 18 U.S.C. § 1962 and the independent charges of extortion and the extortion conspiracy under 18 U.S.C. § 1951 constitute crimes of violence. The Indictment alleges that by extortion, Mr. Castellazzo and others, obtained property, with the consent of the Labor Union and its officers, agents, and representatives, "which consent was induced by wrongful use of actual and threatened force, violence, and fear." ECF No. 1. At the initial appearance, the government proffered generalities about how the "Colombo crime family" furthers its enterprise by threatening to use physical violence. However, the Indictment does not actually charge any crimes of violence, and even further, does not specifically implicate Mr. Castellazzo in the commission of any violent acts.

Both Supreme Court and Second Circuit caselaw require a categorical approach "to determine whether an offense is a crime of violence." *Gray v. United States*, 980 F.3d 264, 265 (2d Cir. 2020). Neither the charge of conspiracy to commit Hobbs Act extortion nor the substantive charge of Hobbs Act extortion are crimes of violence because for both, the categorical approach fails. The same analysis applies to the charged RICO acts of extortion and extortion conspiracy. Under the categorical approach, the Second Circuit "examine[s the offense] in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Smith v. Barr*, 809 F. App'x 54, 55 (2d Cir. 2020) (quoting *Kondjoua v. Barr*, 961 F.3d 83, 86-87 (2d Cir. 2020) (per curiam) (internal quotations omitted)). The Supreme Court corroborates this approach. "The specific acts" an offender may have engaged in, in connection with an extortion offense, for example, are not to be considered in the determination of whether the charged offense *itself* is a crime of violence. *See United States v. Davis*, 139 S. Ct. 2319, 2328-29.

Law Office of Jennifer R Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958

In its detention memo, the government argued that extortion and conspiracy to commit the same were crimes of violence under the BRA. Govt. Det. Memo n.6. However, the main case on which it relies, *United States. v. Ciccone*, and others cited, were decided pre-*Davis* and lack the categorical approach analysis required by law today. 312 F. 3d 535, 542 (2d Cir. 2002). Extortion is "the obtaining of property from another, without his consent, induced by wrongful use of actual or threatened force, violence, or fear, or *under color of official right*." 18 U.S.C. § 1951(b)(2) (emphasis added). This offense does not fit within the force clause of the BRA, as extortion accomplished "under color of official right" does not *require* the "use, attempted use or threatened use of physical force" or "by its nature, involve[] a substantial risk that physical force…may be used." § 3156(a)(4)(A)–(B). *See e.g.*, *United States v. Kennedy*, 133 F.3d 53, 57 (D.C. Cir. 1998). Ignoring current applicable case law, the government improperly argued that crimes of violence are charged against Mr. Castellazzo. Accordingly, Mr. Castellazzo cannot be detained on the basis that §3142(f)(1)(A) was satisfied.

### ii. Mr. Castellazzo Does Not Pose a "Serious Risk of Flight" Under § 3142(f)(2)

Under § 3142(f)(2), a judge is authorized to hold a detention hearing if the defendant poses a "serious risk of flight" or serious risk that a defendant may obstruct or attempt to obstruct justice. At the initial appearance, the government did not proffer facts suggesting that Mr. Castellazzo was a serious risk of flight, nor could they, and the Court did not conduct a factual inquiry on that issue. The BRA's legislative history makes clear that detention based on "serious risk" of flight is only appropriate under "extreme and unusual circumstances." *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983). The government must present facts to show not just the ordinary risk posed anytime a person is charged with a crime, but something far more indicative of subterfuge and prior attempts to evade law enforcement. *Friedman*, 837 F.2d at 49. Magistrate Judge Merkel did not find that Mr. Castellazzo was a serious risk of flight. Pretrial Services found that he posed a risk of nonappearance because of a "history of parole violation[s]," but that assessment was based in part on a parole violation from 1968. According to his record, Mr. Castellazzo has appeared in court on every occasion in the last 50 years. There is simply no factual support that Mr. Castellazzo is a risk of flight, let alone a *serious* risk of flight, as required under the BRA.

### B. Dangerousness Is Not a §3142(f) Factor and Is Therefore an Improper Basis to Detain Mr. Castellazzo

At the initial appearance, the government focused its opposition to our bail motion on the danger Mr. Castellazzo posed to the community. It maintained that, if released, he would use his connections to continue to engage in criminal activity because of his alleged position as the "underboss" of the "Colombo crime family." Even assuming *arguendo* that Mr. Castellazzo did present a danger to the community due to his alleged ability to direct family affairs, his detention would still be unlawful in the present case because the government failed to provide a legitimate § 3142(f) factor under the BRA.

5

Law Office of Jennifer R Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958

Dangerousness to the community is not an applicable basis for detention, and the charges Mr. Castellazzo is currently facing are not contained within the offense-specific (f) factors that authorize a detention hearing. Dangerousness in the absence of § 3142(f) factors is *only relevant* to the potential conditions of release. Indeed, this Circuit has held that "the Bail Reform Act *does not permit detention on the basis of dangerousness* in the absence of a [serious] risk of flight, obstruction of justice or an indictment for the offenses enumerated." *Friedman*, 837 F.2d at 49. Therefore, the government's argument that Mr. Castellazzo is dangerous is not only incorrect, but irrelevant to whether the Court is authorized to seek detention in this case.

In its detention memo, the government points to several cases where alleged members of organized crime were detained pretrial. *See* Govt. Det. Memo at 21-25. The government cites cases from 1987 through 2007 to support its argument. There are more recent cases, such as *United States v. Cammarano, et al.*, 18 Cr. 015 (S.D.N.Y.), where alleged organized crime administration members were charged with racketeering and other counts and released pretrial with reasonable monitoring conditions.

Also in its detention memo, the government describes what is common practice in this district, release involving home detention and electronic monitoring, as "elaborate bail packages." Govt. Det. Memo at 22. To the contrary, these are the standard bail conditions most people, including government cooperators, are released on. This Court should also not be swayed by the government's overly generalized arguments about what "leaders of organized crime" do or that "organized crime defendants often constitute dangers to the community." *Id*. The arguments here must be narrowly tailored to *this* defendant, Mr. Castellazzo, who has not been charged with any violent acts. To argue that it is enough to hold a position goes squarely against the tenets of the Bail Reform Act. The alleged act does cannot diminish Mr. Castellazzo's presumption of innocence.[2] That he has been charged by the government does not automatically make him dangerous.

### i. Even if the Court Finds That a § 3142(f) Factor Is Present in This Case, Mr. Castellazzo's Immediate Release is Warranted

Even in presumption cases where an (f) factor is present, the government must establish by clear and convincing evidence that *no* conditions or combination of conditions will reasonably assure the safety of the community, as required by 18 U.S.C. §§ 3142(e) and 3142(i)(1). The government has failed to do so here. Mr. Castellazzo is 84 years old and lives in a nursing home. He does not use a smartphone and is not technologically savvy. He has neither the financial means nor the physical ability to flee. The government argues that his longstanding role as a leader of the "Colombo crime family" means that he has the power to continue directing illegal activity while out on bail. Although Mr. Castellazzo denies these allegations, he would accept any conditions the Court deems necessary to impose, including limited to no cell

---

[2] [A] [d]efendant's specific title or role is not dispositive. Rather, the Court must make an individualized determination based on the facts proffered regarding Defendant's actions. *United States v. Disano*, No. 18-CR-337-3(WFK), 2018 U.S. Dist. LEXIS 240531, at *12 (E.D.N.Y. Dec. 14, 2018)

Law Office of Jennifer R Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958

phone usage or communication restricted to a list of people approved by the Court. He could be subjected to home detention, electronic monitoring, and or on-site visual surveillance.

Any concerns about Mr. Castellazzo's nonappearance could be allayed by imposing any number of conditions of release that have been shown empirically to reduce the risk of local nonappearance. Extensive home confinement conditions can mitigate any residual risk of flight. *United States v. Sabhnani*, 493 F.3d 63, 78 (2d Cir. 2007) ("[T]here will be on-site visual surveillance as well as electronic monitoring, minimizing the risk of circumvention."). Importantly, the BRA does not require the conditions of release to guarantee with certainty the appearance of the defendant—only that the conditions "reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(g). Given the foregoing, at *minimum* there are a set of conditions that will reasonably assure Mr. Castellazzo's appearance and the safety of the community.

The government suggested in its detention memo that it would rely on thousands of hours of wiretap interceptions and consensual recordings by a confidential witness at any detention hearing in this case. Govt. Det. Memo. n.5. But volume does not equal weight. The evidence against Mr. Castellazzo is weak, if not non-existent, but invariably, the review of these intercepted communications is necessary and critical to mounting a defense. The government has notified us that a substantial portion of discovery will be under a protective order. It would be incredibly difficult to schedule enough meeting hours at MDC Brooklyn for a member of the defense team to review all those calls with Mr. Castellazzo, and more importantly, unrealistic to expect an 84-year-old man in poor health to sit in an MDC Brooklyn visiting room for that many hours while leaning in towards the speakers of a laptop. As far as discovery not designated as protected, Mr. Castellazzo has virtually no experience with computers, making the navigation of a voluminous discovery drive practically impossible. Even if he had familiarity with technology, his access to the law library computers would be severely limited, as is usually the case at the facility. Should Mr. Castellazzo be released, he can convene with counsel in a space, where his discovery can be meaningfully reviewed and discussed.

### ii. The Atrocious Conditions at MDC Warrant Release

Finally, Mr. Castellazzo should not be forced to fight his case or die fighting his case, while suffering the harrowing conditions of confinement in MDC Brooklyn. Since March 2020, the global pandemic has caused over a hundred deaths at BOP facilities, widespread fear of contracting a deadly virus, and a near-total lockdown, in which inmates are isolated with unstructured days and no social contact, confined to their cells, at times for 23.5 hours a day. "[A] day spent in prison under extreme lockdown and in legitimate fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by any ordinary day in prison." *United States v. Lizardi*, No. 11-Cr-1032 (PAE) (S.D.N.Y. Oct. 9, 2020). The impact of those conditions on Mr. Castellazzo is even more profound.

Mr. Castellazzo takes over seven prescription medications daily. He suffers from [REDACTED]

7

Law Office of Jennifer R Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958

██████████████████████████████████████  A few of Mr. Castellazzo's health conditions require frequent check-ups. In a facility with hundreds of unvaccinated people, the risk of Mr. Castellazzo contracting COVID-19 is extremely high, and with his health conditions, he would likely suffer the most severe symptoms of the disease—which neither MDC Brooklyn nor his body would be able to handle.[3]

Before his arrest in this case, Mr. Castellazzo was living alone at a senior citizen home in Manahawkin, NJ, where he received constant and consistent care and treatment. As we argued at the initial appearance, MDC Brooklyn is not equipped to care for Mr. Castellazzo. At a recent sentencing hearing, Judge McMahon stated, "The single thing in the five years that I was chief judge of this court that made me the craziest was my complete and utter inability to do anything meaningful about the conditions at…the MDC, [a] federal correctional facilit[y] located in the City of New York that [is] run by morons which wardens cycle repeatedly, never staying for longer than a few months or even a year. So there is no continuity, there is no leadership, there is no ability to get anything done." *United States v. Days*, 19 Cr. 619 (S.D.N.Y. 2021), ECF No. 35 at 19. The conditions at MDC were very recently on display.[4]

Due to "maintenance" taking place at MDC, from Friday, October 8, 2021, through Tuesday, October 12, 2021, power and water was turned off for inmates from 6 p.m. to 6 a.m. each day. Mr. Castellazzo and all others at MDC were locked down from 3:30 p.m. until at least 6 a.m. each of these days.

With no water, there was no way to flush the toilets. The MDC's solution, according to counsel at MDC, was to give buckets of water to inmates to help flush toilets. However, those buckets are only distributed when staff walked the unit. Staff were only required to walk the units once per hour. This led to inmates being left in their cells, with toilets full of urine and feces until a staff member responded to their requests for a bucket of water—once an hour. Call buttons are broken in many cells, and it is unclear if they were being responded to. In addition, during this time, inmates were given frozen food. Not just cold; frozen bologna. That food was reportedly eaten in the dark due to the lack of power.

There are no words to describe these conditions. No one should be forced to endure these cruel conditions, much less a person who has not been convicted of any crime. In years past, such conditions were regularly described by clients incarcerated in third world prisons. Judges regularly gave credit in consideration of the harsh conditions of confinement clients endured in other countries. That this is occurring in Brooklyn in 2021 is atrocious. As Judge Kuntz stated in July, regarding the conditions inside MDC, "This is a disgrace. It's an ongoing

---

[3] *Coronavirus disease (COVID-19) advice for the public: Myth busters*, World Health Organization, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/advice-for-public/myth-busters ("Older people, and people with pre-existing medical conditions (such as asthma, diabetes, heart disease) appear to be more vulnerable to becoming severely ill with the virus.").

[4] *See More problems in fed jail in Brooklyn; inmates report no lights, water, or hot food, few staffers*; Oct. 10, 2021, available at https://www nydailynews.com/new-york/nyc-crime/ny-water-electricity-conditions-mdc-brooklyn-20211010-27q6mnw6jre4llsko6jbww4m74-story.html

disgrace."[5] The timing of this work, over a holiday weekend, when the jail is usually understaffed and when clients have no access to counsel, is even further cause for concern. Counsel has not been able to verify how Mr. Castellazzo was personally affected by these conditions.[6]

We have absolutely no confidence in MDC Brooklyn's ability to care for our client. If incarcerated pending trial, Mr. Castellazzo will continue to face dangerous, potentially fatal health risks. MDC Brooklyn's medical staff shortages, lack of social distancing, weak testing protocol, and recent crowding, as a result of the impending closure of the Metropolitan Correctional Facility in Manhattan, all weigh in favor of Mr. Castellazzo's immediate release. *See generally Chunn, et al.*, 20 Civ. 1590 (E.D.N.Y. 2020).

### III. Mr. Castellazzo's Proposed Bail Conditions

We propose the follow release conditions:

   a. Mr. Castellazzo's release on his own recognizance;
   b. A $150,000 bond secured by three suretors and two properties;
   c. Home detention with the ability to travel for medical and legal appointments and for conducting routine errands;
   d. Any other standard conditions of monitoring by Pretrial Services.

### IV. Conclusion

The crimes with which Mr. Castellazzo is presently charged with do not provide a basis for detention under the BRA. The BRA demands release in this case. Because the government made no argument that a § 3142(f) factor exists here, Mr. Castellazzo is currently being detained in violation of the law. He has not been charged with a crime of violence, and no evidence has been proffered suggesting he is a *serious* risk of flight or will obstruct justice. Therefore, dangerousness is not a proper basis for detention. In the absence of an (f) factor, danger to the community can only be considered by the Court in setting the conditions of his release.

Even if this were a presumption case, we submit that the government's weak generalities about the alleged power and reach Mr. Castellazzo would still have on home detention, as a high-ranking member of the "Colombo crime family,"[7] do not meet the legal standard necessary to establish that *no* set of conditions on bail could reasonably assure the safety of the community under § 3142(i)(1). Although defense counsel bears no legal responsibility, as detention is plainly unlawful here, to argue that pretrial incarceration for Mr. Castellazzo at his age and in his condition is inhumane and unnecessary, we bear a moral one. Mr. Castellazzo

---

[5] *United States v. Griffin, et al.*, 18 Cr. 192 (E.D.N.Y. 2018).
[6] MDC cancelled all legal calls from Friday through Monday due to the holiday weekend. Counsel was scheduled to speak with Mr. Castellazzo on Tuesday, October 12, 2021, however that scheduled call was cancelled with no explanation. The next in-person visitation appointment available is Thursday at 5:30pm.
[7] Govt. Det. Memo. at 5.

Law Office of Jennifer R Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958

wishes only to prepare his defense, while having access to real medical care that will keep him alive.

      For the aforementioned reasons, Mr. Castellazzo respectfully requests that he be released pending trial with conditions this Court deems appropriate, under §§ 3142(a)–(c).

      Thank you for your consideration.

Respectfully submitted,

/s/

Jennifer R. Louis-Jeune
Kestine M. Thiele

10

Law Office of Jennifer R Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958