**EXHIBIT A**

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,      : 21-cr-00466(ARR)
                               :
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
                               :
RUSSO, ET AL.,                 : September 14, 2021
                Defendants     : 9:38 a.m.
------------------------------X
```

             TRANSCRIPT OF CRIMINAL CAUSE FOR PROCEEDING
               BEFORE THE HONORABLE TARYN A. MERKL
                 UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**
**(VIA VIDEO/AUDIO)**


<u>**For the Government**</u>:            **Jacquelyn M. Kasulis, Esq.**
                                United States Attorney


                         BY:    **Devon Lash, Esq.**
                                Assistant U.S. Attorney
                                271 Cadman Plaza East
                                Brooklyn, New York 11201


<u>**For the Defendants**</u>:
**For Domenick Ricciardo:**     **Robert Caliendo, Esq.**
                                208 Javis St., #3B
                                Brooklyn, NY 11222


**For Benjamin Castellazzo:**   **Jennifer Louis-Jeune, Esq.**
                                Law Office of
                                Jennifer R. Louis-Jeune
                                Duane Street, 7th Floor
                                New York, NY 10007


<u>**Transcription Service**</u>:        **Transcriptions Plus II,**
                                61 Beatrice Avenue
                                West Islip, New York 11795




Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1           (Indiscernible/inaudible portions in transcript

2    due to audio recording)

3           THE CLERK:  Criminal Cause for Arraignment,

4    case number 21-CR-466, *United States v. Domenick*

5    *Ricciardo and Benjamin Castellazzo.*

6           Counsel starting with the government, please

7    state your appearances.

8           MS. LASH:  Devon Lash on behalf of the United

9    States.

10           THE COURT:  I need to ask people who are not

11    participating in this case to mute their mics.  And if

12    you're not speaking, I need you to mute your mic.

13    There's a lot of noise on the Zoom.  Mr. Weinstein, can

14    you hang up if you're done?  Thank you.

15           Sorry.  Go ahead with the appearances.  I could

16    not hear.

17           MS. LASH:  Devon Lash on behalf of the United

18    States.  Good evening, your Honor.

19           THE COURT:  Thank you.  And for Mr. Ricciardo?

20           MR. CALIENDO:  Robert Caliendo on behalf of

21    Domenick Ricciardo.  Good evening, everyone.

22           MS. LOUIS-JEUNE:  Jennifer Louis-Jeune on

23    behalf of Benjamin Castellazzo.  Good evening, everyone.

24           THE COURT:  Good evening.  (Indiscernible).

25           So we're here today this evening on an

1    arraignment (indiscernible).

2              I received a copy of the indictment.  I believe

3    you have a (indiscernible).

4              UNIDENTIFIED SPEAKER:  Thank you.

5              THE COURT:  (Indiscernible).

6              The purpose of today's proceeding is to advise

7    you of certain rights that you have now that you've been

8    charged in this indictment and to inform you of the

9    charges against you, and also to decide what conditions,

10   if any, you shall be released on bond or whether you

11   shall be detained pending trial in this case.

12             As a threshold matter, I want to make sure

13   first that you understand your rights.  You have the

14   right to remain silent.  You are not required to make any

15   statements.  If you say something, you can stop at any

16   time.  You do not need to make any additional statements.

17   But what you must understand is that any statement that

18   you make, except for statements made to your attorney,

19   could be used against you.

20             Mr. Ricciardo, do you understand that?

21             DEFENDANT RICCIARDO:  Yes, ma'am.

22             THE COURT:  How do you say your last name, sir?

23             DEFENDANT RICCIARDO:  It's Ricciardo.

24             THE COURT: Ricciardo.  Okay.  Thank you.

25             DEFENDANT RICCIARDO:  Ricciardo is fine.

Proceedings

1          THE COURT:  Mr. Castellazzo, do you understand

2    your right to remain silent, sir?

3          DEFENDANT CASTELLAZZO:  Yes.

4          THE COURT:  You also have the right to be

5    represented by an attorney.

6          Mr. Caliendo and Ms. Louis-Jeune, are you able

7    to hear me okay?

8          MR. CALIENDO:  Yes.

9          MS. LOUIS-JEUNE:  Yes, your Honor.

10         THE COURT:  Okay.  Thank you.  I was just

11   advised that my Zoom was on mute, but if you've been able

12   to hear me, I won't go back.

13         MR. CALIENDO:  No need to repeat.

14         THE COURT:  Okay.  Thank you.

15         You also have the right to be represented by an

16   attorney during all proceedings, including this one, and

17   during any questioning by the authorities.

18         So, I'm looking at my chart and it looks like

19   the Court has appointed Ms. Louis-Jeune to represent you,

20   Mr. Castellazzo?

21         Is that correct, you're appointed, ma'am?

22         MS. LOUIS-JEUNE:  That's correct, your Honor.

23         THE COURT:  And for you, Mr. Ricciardo, the

24   Court has appointed Robert Caliendo.  Do you understand?

25         DEFENDANT RICCIARDO:  Yes.

1    THE COURT:  The important point is that you

2  have the right to be represented by an attorney from this

3  point forward.  You have a copy of the indictment that

4  was returned by the grand jury.  The grand jury

5  indictment is very lengthy, about 45 pages.

6    As to you, Mr. Ricciardo, you have been charged

7  in one count of racketeering involving racketeering acts

8  that involve extortion and extortion conspiracy of a

9  labor union and an individual identified in the

10  indictment as John Doe #1.  And an attempted extortion

11  and extortion conspiracy of a health fund and service

12  provider vendors for that fund.  You've also been

13  indicted for the racketeering act of conspiring to commit

14  fraud in connection with means of identification.

15    In addition to the racketeering charge, you're

16  charged in four counts related to the Hobbs Act extortion

17  conspiracy and Hobbs Act extortion.  Two of them relate

18  to a conspiracy and the extortion of a labor union, and

19  an individual identified as John Doe #1 in the

20  indictment.

21    The next two charges, Counts 4 and 5, relate to

22  Hobbs Act extortion conspiracy of a health fund and the

23  service providers for the fund, as well as an attempted

24  Hobbs Act extortion of the health fund and service

25  providers for the fund.

1          You've also been charged with conspiracy to

2    commit fraud and it's Count 6.  Conspiracy to commit

3    fraud in Count 6 and 7 are in connection with means of

4    identification.  Count 6 is the conspiracy and Count 7 is

5    the actual fraud charge.  And in Count 8 you're charged

6    with conspiracy to make false statements.

7          Ms. Lash, is that a correct summary of the

8    charges as to Mr. Ricciardo?

9          MS. LASH:  Yes, your Honor.

10          THE COURT:  Thank you.  Turning now to you, Mr.

11    Castellazzo.

12          You're charged with some of the same crimes.

13    You're charged with Count 1 racketeering involving the

14    same -- two of the same racketeering acts.  Racketeering

15    Act 1 alleges the extortion and extortion conspiracy

16    pertaining to a labor union and an individual identified

17    in the indictment as John Doe #1.

18          In addition, you're charged with an attempted

19    extortion and extortion conspiracy of a health fund and

20    service provider vendors for the fund.  And in

21    Racketeering Act 6, there was an agreement or conspiracy

22    to commit money laundering.  You're charged in the same

23    four substantive Hobbs Acts extortion, conspiracy and

24    extortion charges, including Counts 2 and 3, which are

25    the extortion conspiracy and extortion of a labor union

Proceedings

1 and John Doe #1.  And Counts 4 and 5 which are the Hobbs

2 Act extortion conspiracy and attempted extortion of a

3 health fund and the service provider vendors for the

4 fund.

5         In addition, you're charged in Count 13 with a

6 money laundering conspiracy.  Count 14 is the conspiracy

7 to steal and embezzle health care benefits.  And Count 15

8 a health care fraud conspiracy.  And Count 16 an

9 attempted health care fraud.

10         Is that a correct summary of the charges, Ms.

11 Lash?

12         MS. LASH:  Yes, your Honor.

13         THE COURT:  Starting with you, Mr. Caliendo,

14 have you received a copy of the indictment?

15         MR. CALIENDO:  Yes.

16         THE COURT:  I note, as I just did, that we gave

17 a copy to your client as well.  Have you discussed the

18 nature of the charges with him?

19         MR. CALIENDO:  I have not, because I was only

20 provided the indictment after the pretrial interview.

21 And given the logistics of the day I had no other

22 opportunity to speak with him.  However, I can enter a

23 plea of guilt -- not guilty on his behalf, waive the

24 public reading.  And regardless of how this proceeding

25 turns out, I will be meeting with him in person this week

Proceedings

1  to go over the charges in detail.

2          THE COURT:  Even though you were not able to

3  review the charges, did you advise Mr. Ricciardo of his

4  rights?

5          MR. CALIENDO:  Yes.

6          THE COURT:  Mr. Ricciardo, based on what I've

7  described in the indictment before you, do you have any

8  questions you'd like to ask the Court --

9          DEFENDANT RICCIARDO:  No, not right now.

10          THE COURT:  -- or your attorney about the

11  nature of the charges?

12          DEFENDANT RICCIARDO:  No, not right now.

13          THE COURT:  Okay.

14          And do you understand the basic idea of what

15  you've been charged with, sir?

16          DEFENDANT RICCIARDO:  Yes, I do.

17          THE COURT:  Okay.  Same question to you, Ms.

18  Louis-Jeune.  Did you receive a copy of the indictment?

19          MS. LOUIS-JEUNE:  Yes, I did, your Honor.  And

20  my associate, Ms. Thiele, who is present in the courtroom

21  right now was able to go over the indictment with Mr.

22  Castellazzo.  We would waive the reading --

23          THE COURT:  Thank you for noting your associate

24  is here.  Would you mind just putting your appearance on

25  the record.

Proceedings

1              MS. THIELE:  Kestine Thiele on behalf of Mr.
2    Castellazzo.
3              THE COURT:  And how do you spell your last
4    name?
5              MS. THIELE:  T-H-I-E-L-E.
6              THE COURT:  Thank you.  And in going over the
7    charges, did you, Ms. Louis-Jeune, together with Ms.
8    Thiele, advise Mr. Castellazzo about his rights?
9              MS. LOUIS-JEUNE:  Yes, your Honor.
10             THE COURT:  And are you satisfied that Mr.
11   Castellazzo understands the nature of the charges?
12             MS. LOUIS-JEUNE:  Yes.
13             THE COURT:  Mr. Castellazzo, do you have the
14   understanding of what you've been charged with, sir?
15             DEFENDANT CASTELLAZZO:  Yes.
16             THE COURT:  Okay.  I'd now like to turn to the
17   question -- I'm sorry, Ms. Louis-Jeune, is Mr.
18   Castellazzo prepared to enter a plea to the charges in
19   the indictment at this time?
20             MS. LOUIS-JEUNE:  Yes.  He would enter a plea
21   of not guilty, your Honor.
22             THE COURT:  All right.  So the plea as to each
23   of the defendants of not guilty as to all charges in
24   which they're named in the indictment is so noted.
25             Now, I would like to turn to the question of

Proceedings

1   pretrial release.  What is the government's position with

2   respect to bail as to Mr. Castellazzo to start?

3            MS. LASH:  Your Honor, the government seeks

4   detention as to Mr. Castellazzo as outlined in the

5   detention memo (indiscernible).

6            THE COURT:  Mr. Caliendo, are you prepared to

7   proceed with a bail package today of any kind?

8            MR. CALIENDO:  I am.

9            THE COURT:  You are?

10           MR. CALIENDO:  I am.  May I?

11           THE COURT:  Yes.

12           MR. CALIENDO:  I know it's late and it's been a

13  long day, so I'll be concise to the best of my ability.

14  But this man, Mr. Ricciardo, does not belong at MDC.  He

15  is 56 years old, he weighs approximately 350 pounds.

16  During the pretrial services interview we went through so

17  many medications that I couldn't even keep up with

18  writing them all down.  He has rheumatoid arthritis.  He

19  takes a handful of other -- he has high cholesterol, high

20  blood pressure, he's a type 2 diabetic.  I'm told that a

21  number of these medications are immune suppressant.  He

22  -- the Court may have noticed that when he entered the

23  courtroom he had a cane and he appeared to be struggling

24  even to walk.

25           I would note that at this point in time where

Proceedings

1   we are right now with the pandemic he simply should not

2   be at MDC.  I would note that MCC in Manhattan, I'm told

3   is closing within three or four weeks, and that most of

4   those people, if not all of them, are going to wind up at

5   MDC.  MDC was in -- is in very, very bad shape right now.

6   I cannot imagine how bad it's going to be when MCC closes

7   in a few weeks.

8           My client -- getting to dangerousness and

9   flight, the Court's read about 100 pages worth of

10  indictment and detention memo.  And as other lawyers have

11  noted correctly and, of course, that's not the sum of the

12  evidence or all of it or even most of it, but it's

13  generally considered to be the most compelling evidence

14  and the greatest hits.  And even though the extortion

15  counts take up a lot of pages in the indictment, the

16  discrete acts that my client is accused of pale in

17  comparison with what is in the rest of the documents.

18          He is accused of sending threatening text

19  messages and making personal in-person collections of

20  payments from the John Doe 1 individual.  He is also

21  accused in a related or separate part of the case with

22  taking money from an undercover, about $500, and then

23  later giving the undercover a phony OSHA card.  He is not

24  accused in any other aspects of the case, Judge.  The

25  marijuana, nothing else.

Proceedings

1        And I would note that when it came to the

2  extortion part of the case, the most serious part seemed

3  to be where the government described it as "the broader

4  plan," which included forcing John Doe 1 and others at

5  the union to essentially do things that certain people

6  wanted them to do, not just the collection of that money,

7  but a broader supposed control of the union.

8        Again, the greatest hits do not put my client

9  in that part of the case.  I'm not saying the government

10  doesn't have any evidence, perhaps they do. that connects

11  him to it in some way, but what they highlighted was

12  limited to those discrete portions of the case.

13        I think it's important to note that the

14  government, the argument that they've relied on for most

15  of the day, and I've spent hours listening to different

16  bail arguments, but they say "the racketeering defendants

17  also pose a danger to the community because as members of

18  organized crime the defendants are career criminals who

19  have pledged their loyalty to an illegal enterprise."

20  None of that applies to my client.  He is not a career

21  criminal.

22        The Court will note from the pretrial services

23  report that there is one reported contact with the

24  criminal justice system from I think 1994.  That's more

25  than 25 years ago for a DUI or a DWI.  So he is

1 absolutely not a career criminal.  Nor does the

2 government allege that he has pledged (indiscernible) or

3 loyalty to any organization.  He is, at most, accused of

4 being an associate and nothing more.  So the strongest

5 part of the government's arguments that may perhaps have

6 applied to other people earlier in the day, simply do not

7 apply to this man.

8          I would note that the pretrial services report

9 also contains a few things that I found a bit peculiar.

10 They say that his income is unverified.  My understanding

11 was that he gets about $2,000 give or take from Social

12 Security every month.  That should be pretty easy to

13 verify.  They also hold it against him that he has a

14 mental health history and substance abuse history.  But

15 the man's been sober since 2006.  And he was quick to

16 point out his sober date, I forget the exact number, but

17 he knew it by heart.  The man's been sober for 15 years,

18 that's something that goes in his favor, not something

19 that goes against him.  The fact that he's been sober

20 that long makes him more reliable and more likely to come

21 back to court.

22          The one thing that does make a little difficult

23 for me is that my client is not in the position that

24 other people are in, in that they have friends and family

25 with money who could put up houses and things of that

Proceedings

1    nature.  My client is very much on his own in life.  He

2    has parents and siblings but he is, if I may use the word

3    "estranged" from them.  So he does not have the benefit

4    of people with, you know, hundreds of thousands of

5    dollars in equity in a house to stand by him.  But that

6    again, that shouldn't be held against him.  If anything,

7    that only underscores how devastating it's going to be if

8    he spends weeks or months or as long as it might take to

9    get a trial which, you know, could be a very long time,

10   at MDC.  He's likely to lose his apartment.  He rents his

11   apartment, I think it was about $900 a month.  If he's in

12   MDC, I don't think he has anyone to, you know, pay a

13   phone bill, pay a light bill, things like that.  It's

14   going to be devastating for him if he's incarcerated.

15          I want to propose other conditions that I

16   think, frankly, are better than people signing a piece of

17   paper that's a promise to pay, conditions like a curfew

18   that will actually  -- and restrictions on what he can do

19   and can't do, that will actually, I think, better serve

20   to address the government's concerns.

21          The fact -- if I may have one moment.  To me,

22   frankly, I don't like the idea of my client facing

23   potential months of incarceration because he doesn't have

24   friends or family with equity in homes or money to put

25   up.  To me, that actually makes me think of the now

Proceedings

1    heavily disfavored concept of cash bail that we see in

2    other jurisdictions.  It's not exactly the same but I

3    think it boils down to someone sitting in jail because

4    they don't have a certain amount of money attached to

5    them to get them out.

6            I think the Court, even if this is a

7    presumption case, the Court can easily, easily fashion

8    conditions that meet the government's concerns.  The two

9    things he's accused of here -- let me say it this way.

10   The question is not whether the government can prove that

11   he sent a text message in early 2020 that John Doe 1 felt

12   threatened by or scared by.  The issue is if he's

13   released is he going to be a danger to the community.  I

14   cannot, and I don't mean this as exaggeration or

15   hyperbole, I cannot imagine a situation where my client

16   is enlisted into this sort of things that he's accused of

17   after the arrests today.  I have no idea about this

18   school where they were doing the safety training, I know

19   truly nothing about it, but I can't imagine that it's

20   either going to continue to operate, and if it does that

21   my client will have anything to do with it or he would

22   even be permitted to go there.

23           And the same thing with this allegation about

24   collecting money.  There's just simply no way that

25   something like that is going to happen.  The argument

Proceedings

1  that the government usually relies on and that they've

2  been relying on all day, is that well, in these types of

3  cases people can tell others to do things or order other

4  people to do things. But again, this isn't my client.

5  He's, at best, alleged to be an associate. He has no

6  decision-making power, no authority. I would be shocked

7  to hear that the government would accuse him of any kind

8  of conduct as far as, you know, ordering other people to

9  do things. He's at the bottom of the food chain. So

10 again, it should be very easy to fashion conditions that

11 meet the government's concerns.

12       Regarding flight, the man doesn't even have a

13 passport. He's left the country, I think, twice in his

14 life; one to go to Tijuana at a time when you didn't need

15 a passport and one to go to Niagra Falls, Canada, Niagra

16 Falls, again at a time when you didn't need a passport.

17       And Mr. Ricciardo, I apologize for describing

18 you in this way, and I do not mean this to be -- I'm not

19 trying to be funny here, I'm being deadly serious, the

20 man is 350 pounds, he has no money and no support system,

21 where is he possibly going to go and how is he possibly

22 going to get there and what is he going to do? These

23 charges are of course serious but it's just -- it is not

24 realistic to think that this man is going to spend

25 decades or years on the run to avoid the acts that he's

Proceedings

1    accused of in that detention memo.  The charge is

2    serious, I don't know what his guideline range is going

3    to be, but he is not facing the kind of time that people

4    run away from.

5            If I may have a moment to just check my notes.

6    He's not accused of any actual violence.  He's accused of

7    threatening violence but accused of no actual violence.

8    Again, he has no criminal history.  And the Court should

9    easily be able to fashion conditions that meet the

10   necessary goals. I am eager to address any concern that

11   the Court has or address any condition that the Court may

12   wish to entertain.  My client will sign essentially

13   whatever recognizance bond the Court wants.  The Court

14   can choose the number, I will not object to any number

15   the Court picks that he will promise to owe that money if

16   he violates his bail conditions.  He can be put on a

17   curfew.  And again, there is simply no reason that this

18   man needs to go to MDC under these circumstances.  Thank

19   you, Judge.

20           THE COURT:  Ms. Lash, would you like to be

21   heard?

22           MS. LASH:  Yes, your Honor.  Your Honor, this

23   defendant, along with Vincent Ricciardo, his cousin, is

24   one of the longest running (indiscernible).

25           This defendant's participation goes back to

Proceedings

1  2001, your Honor, which is 20 years, over $600,000

2  collected from John Doe 1 under threat of violence.

3       This defendant has had direct contact not only

4  with John Doe 1, but with other victims.  And as you

5  heard today, your Honor, several defendants have said

6  well, I am not the one who had contact with the victims

7  of this scheme.  Well, that person is Domenick Ricciardo.

8  He's the one who reached out, who threatened them, who

9  collected the money in every incident.

10      Domenick Ricciardo is a former employee of the

11  labor union that is at issue with the extortion who

12  appeared to use that knowledge to further the extortion

13  and along with that, he is aware of the employees and the

14  relatives that work there and (indiscernible).

15      I believe defense counsel noted that he didn't

16  direct others to act.  There are numerous instances that

17  Domenick Ricciardo committed acts himself and taking

18  initiative upon himself to reach out and contact others.

19      One example of this that is explained in the

20  detention memo is back in the November 5, 2020 meeting

21  between Mr. Ricciardo and John Doe 1, Mr. Ricciardo

22  directed them (indiscernible) counter surveillance to

23  make sure no law enforcement, no one was being followed.

24      Your Honor, I'll direct you to the messages

25  themselves and the threats of violence that he made.

Proceedings

1  Domenick Ricciardo, his association with the Colombo

2  Crime Family and should not be allowed to

3  (indiscernible).

4         As to the risk of flight argument here, as

5  defense counsel has explained he has no suretors to

6  offer, no ties to the community.  There's no moral

7  suasion as we see with people (indiscernible).  There's

8  no reason that we would expect Domenick Ricciardo to show

9  up in court (indiscernible).

10        Furthermore, this indictment charges several

11 fraud counts, fraud in connection with means of

12 identification and conspiracy to commit that fraud.

13 Domenick Ricciardo has sustained himself by working at an

14 unlawful OSHA school that certifies people have attended

15 OSHA classes when in fact they have not.  That shows we

16 persons, insurance fraud, and it shows that he cannot

17 comply with court conditions.

18        In addition to that, defense counsel raised

19 some arguments about his health and other

20 (indiscernible).  The MDC, as your Honor knows, has

21 health professionals on staff.  We have a confinement

22 order here.  The government has no concerns about

23 (indiscernible) there.

24        Now, the weight of the evidence against

25 Domenick Ricciardo is very strong as you can see from the

1   detention memo.  While his criminal history is not as

2   extensive as his co-defendants, the other factors and the

3   nature and circumstances of this offense, his criminal

4   history (indiscernible).

5           MR. CALIENDO:  Judge, may I briefly respond?

6           THE COURT:  Yes.

7           MR. CALIENDO:  I know we're not going to get

8   into a debate at this hour about medical care at the MDC

9   but I think we all know what the state of it is.  I have

10  a client there now that has a broken leg, he can't even

11  get an x-ray.  The government raises the argument that

12  it's been 20 years and over about 600k collected.  If

13  it's been 20 years and essentially the worst he's accused

14  of is making collections, that is not something you

15  should be denied bail for.  The government cites all the

16  cases in their memo about all these, you know, big time

17  people who have been denied bail.  well, I mean, I have

18  as well, and frankly, I'm confident that the Court knows

19  them a lot better than I do.  I have a list of my own

20  cases and, you know, I'm sure I can read the cites into

21  the record, if you want me to, I'm sure you don't.  But

22  you know, there's equally as many cases where supposedly

23  higher people are granted bail.  People in vastly more

24  serious trouble than my client and people with vastly

25  worst criminal histories.  It's not that he doesn't have

Proceedings

1   a similar criminal history, he has no criminal history

2   other than this DWI from, you know, almost 30 years ago.

3   When the government talks about him conducting this

4   counter-surveillance, again, if this is the worst of it,

5   if this is the greatest hit, he should absolutely be

6   released.  If he's found guilty of it, he'll have to

7   answer for that and that will be his problem down the

8   road or perhaps sooner.  But that is not a reason to hold

9   him at MDC.

10            I should have mentioned earlier, by the way,

11  when it comes to ties to the community, my client is a

12  lifelong New Yorker.  He's born in Brooklyn, he's lived,

13  I think, within the same, you know, 15 square miles,

14  literally, his entire life.  He's never been anywhere

15  else, he's never known anywhere else.  So again, while he

16  doesn't have a parade of family members, there is no

17  where for him to go, this is his life, his community.

18  He's a lifelong resident, I believe of the Eastern

19  District of New York.

20            Lastly, with regard to the government's

21  argument about the OSHA IDs, I know what an OSHA license

22  is, I've never actually seen one physically, so I googled

23  it.  It looks to me like a laminated piece of paper,

24  maybe a laminated piece of plastic.  The notion in the

25  government's detention memo that that's akin to somehow

Proceedings

1  forging identification documents or travel documents,

2  something like a driver's license or a passport that has

3  a magnetic strip and things you scan, I mean, it's apples

4  and oranges.  That is not a compelling argument.

5          Again, I'm eager to address any concern that

6  the Court may have.

7          THE COURT:  Thank you, Mr. Caliendo.

8          I am very sympathetic to Mr. Ricciardo's health

9  conditions that you have described.  I do not share the

10 government's confidence in the Metropolitan Detention

11 Center's ability to handle his medical conditions.  But

12 based on my review of the indictment, the pretrial

13 services report, the bail package proposed by counsel,

14 the government's proffer of the evidence, including the

15 evidence set forth in the detention memo and the

16 additional facts offered by Ms. Lash a moment ago

17 regarding the long-term participation of Mr. Ricciardo in

18 the extortion that literally is the heart of this case,

19 in light of all of these circumstances, including the

20 nature of the allegations and the strength of the

21 evidenced, which I find as to Mr. Ricciardo, the strength

22 of the evidence is significant.  I find that the totality

23 are in favor of Mr. Ricciardo's pretrial detention.

24          I fully hear you, Mr. Caliendo, that this may

25 seem unfair to the extent that it is your position that

Proceedings

1   he's being punished for not having wealthy relatives and

2   friends.  That is not the situation.  The situation is

3   that he is charged with being a principal player in a

4   very long-term extortion.  These labor racketeering cases

5   are not victimless crimes.  Mr. Ricciardo and his cousin

6   Vincent Ricciardo, as detailed in the detention memo,

7   went to great lengths to place John Doe #1 and his family

8   in fear.

9           In addition, Mr. Ricciardo there is evidence

10  sent text messages specifically used the reputation of

11  the Colombo crime family to, you know, get people to do

12  what he was seeking to do.  One of the text messages

13  describe, "this is my second text message, there won't be

14  a third."  Only people with deep connections to an

15  organized criminal group and a history of representations

16  of threats of violence can send a text message like that

17  with effect.  Mr. Ricciardo was the author of that text

18  message as proffered in the detention memo.

19          The nature and circumstances of the alleged

20  offense do include a crime of violence.  And in the

21  absence of any cognizable bail package that would provide

22  the moral suasion necessary to encourage Mr. Ricciardo to

23  change his way of life is simply insufficient for the

24  Court to find comfort that this bail package proposed by

25  Mr. Caliendo will be sufficient.

1     I note that -- I credit Mr. Caliendo's

2  description of your personal history, Mr. Ricciardo, and

3  that you have these ties to the community.  I do not find

4  that you pose a risk of flight.  I also credit Mr.

5  Caliendo's arguments that your mental health history and

6  any substance abuse history should not be used against

7  you if you are clean and you are doing what you need to

8  do in that regard.  And I am sympathetic to your medical

9  situation, so I'm not finding that you pose a clear and

10 convincing danger to the community that could not be

11 overcome by some package, but I do not feel comfortable

12 releasing you on your own recognizance or even with those

13 restrictions describing, Mr. Caliendo, I am sympathetic

14 to your argument that you don't have a lot of family

15 support from which to draw and put together a robust bail

16 package of the kinds that have been offered to some of

17 the defendants in this case.

18     But that does not outweigh the long-term scheme

19 here that caused harm to real people.  And the

20 possibility that you and somebody with specific and

21 granular knowledge about how that fraud is perpetuated

22 would be compelled due to your connections to organized

23 crime to continue to engage in criminal activity.

24     The longstanding entrenched nature of the

25 organized crime rackets that infiltrate labor unions in

Proceedings

1  this city are serious and real.  And they are not sources

2  of earnings that organized families readily give up.

3  Given Mr. Ricciardo's long-term involvement in it and his

4  specific personal involvement in executing the scheme, I

5  simply find that the proffered bail package is

6  insufficient.

7          As I said, I will make that finding with leave

8  if you do come up with a bail package Mr. Caliendo, you

9  can certainly ask the case to be heard again.  But I

10  don't think that based on his signature, even with a lot

11  of restrictions that that will be sufficient to ensure

12  the safety of the community and to ensure that Mr.

13  Ricciardo abides by all of the terms and conditions of

14  release.

15          MR. CALIENDO:  I heard the Court earlier today

16  explain, as we all know, you can't order MDC to do

17  anything medical but you can essentially tell them to

18  consider it.  I will email the Court, to the best of my

19  awareness the list of maladies, but I would just ask MDC

20  to please get it directly from my client because he knows

21  it better than I do and to please act on that.

22          THE COURT:  We will certainly send a medical

23  memo to the MDC.

24          And, Mr. Ricciardo, if you are not vaccinated,

25  MDC does have vaccinations available.  So you should take

Proceedings

1   advantage of that opportunity immediately if you are not

2   vaccinated.

3           DEFENDANT RICCIARDO:  Yes.

4           THE COURT:  So, Mr. Caliendo, is there any

5   further as to medical?

6           MR. CALIENDO:  No.  Do you want to me to do the

7   speedy trial waiver and hang up or do you want me to stay

8   on the line?

9           THE COURT:  Lets turn to Mr. Castellazzo.

10          Mr. Castellazzo, is there a bail package, Ms.

11  Louis-Jeune?

12          MS. LOUIS-JEUNE:  Your Honor, I would like to

13  propose a package for Mr. Castellazzo, which would -- and

14  I discussed this and sent these parameters to the

15  government earlier today and they did not consent based

16  on their detention memo.  But I would propose that Mr.

17  Castellazzo be released tonight on his own recognizance

18  and given time to get to financially responsible persons

19  to sign a $50,000 bond.

20          Mr. Castellazzo is 83 years old.  He's lived in

21  New Jersey for the past 20 years.  He lived with his wife

22  who he was married to for 66 years, who recently passed

23  away not quite a year ago.  He was arrested today inside

24  of a senior center where he lives.  This isn't a person

25  who is out, you know, creating a dangerous environment in

1  the community.  He is the alleged underboss in this case,

2  but again that is just an allegation.  Mr. Castellazzo

3  doesn't even have a cell phone, he has a landline that he

4  uses.

5          And pretrial services has an amazing record of

6  making sure that people appear in court when they need

7  to.  And Mr. Castellazzo will appear.  He has, you know,

8  his risk of non-appearance according to pretrial services

9  is based in part of a parole violation which is from

10  1968.  I mean, that shouldn't even be considered.

11          As for the government's detention memo, they

12  state that Mr. Castellazzo was at a dinner at a

13  restaurant in mid-November and again, I guess twice in

14  November.  They have not proffered any evidence of what

15  those conversations were at that dinner.  You know, going

16  to dinner with your friends isn't a crime.  And as far as

17  their allegations in April of 2021 regarding extortion

18  efforts, you know, those are based on someone having a

19  conversation about Mr. Castellazzo, not something that

20  Mr. Castellazzo himself said.  And the government speaks

21  about law enforcement officers surveilling a meeting

22  where Mr. Castellazzo allegedly received reports.  But

23  how does the government know what the purpose of that

24  meeting if there's no proffer of evidence regarding that?

25          Most importantly here as to the assessment of

Proceedings

1  danger, understanding that the government finds these and

2  the Court finds the offense to be serious there is no

3  safety concern to the community from an 83 year old man,

4  especially under conditions where he could be put under

5  home detention.  Again, he doesn't have access to any

6  cellular communications where he can be reaching out to

7  others which was a concern that the government brought up

8  in their detention memo.

9          The greatest risk right now to Mr. Castellazzo

10 would be going into the MDC.  And going into the MDC,

11 pretrial is basically a death sentence to someone who's

12 83 years old with multiple health conditions.  And it's

13 very important to remember, you know, this is a pretrial

14 detention that he would be being subjected to.  And to

15 speak frankly, your Honor, we know how long these cases

16 to take to play out before they're, you know, we can get

17 through the voluminous discovery.  And it would be

18 extremely difficult for Mr. Castellazzo to maintain his

19 health which is already in a feeble state while being at

20 the MDC.  And there is certainly a number of conditions

21 under which pretrial services could monitor his

22 activities to be sure he is not associating with others

23 or any other conditions that the Court would find

24 necessary.

25          THE COURT:  Thank you, Ms. Louis-Jeune.

Proceedings

1  Similarly to Mr. Ricciardo, in the absence of any kind of
2  bail package I do not intend to release Mr. Castellazzo,
3  certainly not on his own signature.  You describe him as
4  an 83-year-old who poses no danger to the community, but
5  there is substantial information proffered in the
6  government's detention memorandum that he's a
7  longstanding member of the Colombo crime family and
8  serving as its underboss.  In that role he has the
9  opportunity and power to direct the affairs of that
10 enterprise and has a vested interest in doing so, he's
11 been doing it for decades if you believe the detention
12 memorandum and the prior cases in which he was charged
13 and convicted.
14          This is not a similar situation to Mr.
15 Ricciardo in terms of his criminal history.  Mr.
16 Castellazzo has been prosecuted multiple times previously
17 related to his involvement in the Colombo crime family.
18 And he stands here again having been charged with crimes
19 related to his role in that family.
20          I note in 1994 at age 56 he was charged with
21 illegal gambling conspiracy and related crimes at age 56.
22 In 2000 at age 62 he was charged with extortion -- I
23 don't know I haven't checked the transcript but I
24 wouldn't be too surprised if somebody argued what harm
25 can a 62 year old man do in that case.  At age 73 he was

Proceedings

1  charged with racketeering involving collection --

2  extortion and collection of credit and interfering with

3  interstate commerce, by threat of violence in Hobbs Act

4  charge and money laundering.  He's made a career of

5  organized crime and he's in a position of authority with

6  regard to the institution of the Colombo organized crime

7  family.  As a result, I would say that he's more

8  similarly situated to Dominic Cirillo and Lawrence

9  Dentico in the Cirillo case in which the Second Circuit

10  affirmed the pretrial detention of the acting boss and

11  the underboss of the Genovese crime family when they were

12  both in their older years.  Because of their role to

13  direct the affairs of that enterprise admittedly in the

14  Cirillo and Dentico case those defendants were charged

15  with crimes involving more violence than this case.

16          But in the absence of any bail package at all

17  the government's arguments that Mr. Castellazzo should be

18  detained and that he poses a danger to this community is

19  found to be credible by the Court.  I'm not saying it's

20  impossible there could be a set of conditions that Mr.

21  Castellazzo could proffer to the Court, given that he is

22  an older gentleman than the prior cases but the bail

23  package and the conditions would likely need to be very

24  substantial to a assuage the Court's concerns about his

25  continued involvement in crime.  And even with that said,

Proceedings

1  I would caution against trying to replicate a jail

2  facility as the Second Circuit found unadvisable in the

3  Oreno and the Arena cases. When we're dealing with

4  organized crime figures the age is not so important. The

5  power that they have in the family that can carry the day

6  with regards to whether or not they pose a continued

7  danger to the community.

8          And I find that Mr. Castellazzo does pose a

9  continued danger to the community and the government

10  proffered substantial evidence as to his active

11  involvement in the crimes set forth in the indictment.

12          So unbalanced looking at all of the bail

13  factors in terms of the history and the characteristics

14  of the defendant, the weight of the evidence, the nature

15  and circumstances of the alleged offense, including the

16  fact that he's charged with crimes of violence and the

17  nature and seriousness of the danger that he presents to

18  the community if released, I find that he does present a

19  danger to the community and I decline your application.

20          With that said, Ms. Louis-Jeune, is there

21  anything else that we should take up as to the bond

22  argument?

23          MS. LOUIS-JEUNE: Not at this time, your Honor.

24          THE COURT: Ms. Lash, anything further on the

25  bond questions?

Proceedings

1          MS. LASH:  No, your Honor.

2          THE COURT:  My understanding is that there is a

3    status conference before Judge Ross in this case on

4    October 21st at 11 a.m.  She's the district judge that is

5    assigned to your case, Mr. Ricciardo and Mr. Castellazzo.

6          Starting with you, Mr. Caliendo, have you

7    discussed the possibility of excluding time with Mr.

8    Ricciardo?

9          MR. CALIENDO:  I have not had the opportunity

10   to do that.

11         THE COURT:  Ms. Louis-Jeune, have you discussed

12   the possibility of excluding time with Mr. Castellazzo?

13         MS. LOUIS-JEUNE:  I have not had the

14   opportunity to do so but I do believe that Mr.

15   Castellazzo understands.

16         THE COURT:  What is your position to waiving

17   time, Ms. Louis-Jeune?

18         MS. LOUIS-JEUNE:  We'll consent to the waiver

19   of time, your Honor.

20         THE COURT:  Mr. Caliendo?

21         MR. CALIENDO:  Yes, that's fine.

22         THE COURT:  Okay.  So what we've been talking

23   about, Mr. Ricciardo and Mr. Castellazzo, is the

24   government has made an application in all of the

25   arraignments for this case to exclude time in counting

Proceedings

1   the speedy trial clock in your case.  And what that means

2   is that under the Constitution and Laws of the United

3   States, you are entitled to a speedy and public trial

4   within 70 days of the filing of an indictment.

5           If the government fails to bring you to trial

6   timely under the statute, there could later be a motion

7   to dismiss the case or of other release.

8           The government has requested and your attorneys

9   have suggested that it's okay with them that I enter

10  what's called an order of excludable delay, which would

11  mean that the Court would not count from today until

12  October 21st against the speedy trial clock in your case.

13  Those days wouldn't count in counting up the 70 days that

14  I mentioned.  The reason for this is that the government

15  is preparing the discovery in your case and there's a lot

16  of it.  In order to provide discovery in making an

17  informed decision about what you would like to do in your

18  case, the government and your attorneys seem to believe

19  that there is a need for some time to do so.  You may

20  also, upon reviewing the discovery, to conclude that

21  you'd like to discuss a disposition with the government

22  short of trial.  I don't know what their intentions will

23  be.

24          Mr. Ricciardo, do you understand what I've said

25  so far?

Proceedings

1        DEFENDANT RICCIARDO:  Yes.

2        THE COURT:  Mr. Castellazzo, do you understand?

3        DEFENDANT CASTELLAZZO:  Yes, your Honor.

4        THE COURT:  Mr. Ricciardo, do you agree to

5   exclude the time between today and October 21st in

6   counting the speedy trial clock?

7        DEFENDANT RICCIARDO:  I'll do as my lawyer

8   says.  I have no -- however you want to put it -- I don't

9   know what's going on here.  So whatever he says is okay

10  with me.

11       THE COURT:  Okay.  So I appreciate that you are

12  trusting your lawyer in this regard but it is your right

13  to a speedy trial that would be being, you know, a chunk

14  of the time would be taken out of the clock.  This is

15  very common, particularly during COVID because things

16  take longer --

17       DEFENDANT RICCIARDO:  I'd like to get it done

18  as soon as possible, but --

19       THE COURT:  I understand that.  But you don't

20  want to go into trial without knowing the charges and the

21  evidence either.  So a lot of times the defense attorneys

22  and the government think it's best to exclude some time.

23  But I certainly don't pressure or force you to do so.  I

24  also note that in a multi-defendant a speedy trial clock

25  would be controlled by, you know, the group decision as

Proceedings

1  to whether or not to waive the time.  So if you don't

2  want to waive the time, that is your right.  All that it

3  would mean is that from today until October 21st,

4  basically five weeks, would not count in the 70-day clock

5  as to which you could go to trial.  That's all it means.

6  If you would like to speak with your about it, that's

7  fine.

8          DEFENDANT RICCIARDO:  Yeah, I do.

9          THE COURT:  I don't want to pressure you in

10  making that decision.

11          DEFENDANT RICCIARDO:  Yeah, I would like to

12  speak to my attorney.

13          THE COURT:  Okay.

14          MR. CALIENDO:  Domenick, the Judge is going to

15  exclude the time anything, so it's academic, but I don't

16  want you to consent to anything now that we haven't

17  discussed.  So we won't consent for now, but I'm aware

18  that the Court will exclude the time anyway for the

19  reasons stated.

20          DEFENDANT RICCIARDO:  Your Honor, I make no

21  decisions until I talk to you.

22          THE COURT:  And that's fine, Mr. Ricciardo,

23  certainly nobody wants to pressure you to make a

24  decision.

25          DEFENDANT RICCIARDO:  But I can change my mind

Proceedings

1  tomorrow after talking to him, okay.

2          THE COURT:  Certainly.

3          Mr. Castellazzo, do you understand the

4  possibility of excluding time in your case?

5          DEFENDANT CASTELLAZZO:  Yes, your Honor.

6          THE COURT:  Do you agree to exclude the time?

7          DEFENDANT CASTELLAZZO:  Yes.

8          THE COURT:   Thank you, sir.

9          So given the totality of the circumstances in

10  the case, including the ongoing COVID pandemic and the

11  complexity of the discovery in this matter as represented

12  by the government multiple times over the course of the

13  day, I am going to enter an order of excludable delay,

14  excluding the time from today until October 21st, finding

15  that it is in the interest of the public and the

16  defendant to permit time for discovery and to permit the

17  parties an opportunity to engage in any discussions they

18  would like to have about a disposition of the case short

19  of trial.

20          I also note that there is a standing order in

21  the Court providing for additional time to both sides due

22  to the ongoing delays associated with COVID.  And I

23  believe that the time is excludable on that basis as

24  well.  And that time exclusion is regardless of

25  defendant's consent.

Proceedings

1   So I fully respect, Mr. Ricciardo, that you

2   don't feel prepared to make the decision, no pressure, no

3   prejudice to you, but I am going to exclude the time on

4   the speedy trial clock until October 21st.  In between

5   now and then you can have the chance to speak with Mr.

6   Caliendo about the timing and the future of your case

7   once you have a little more information provided in

8   discovery.  Okay, sir?

9   DEFENDANT RICCIARDO:  Okay.

10   THE COURT:  With that, Mr. Caliendo, anything

11   else we need to take up as with Mr. Ricciardo?

12   MR. CALIENDO:  Just this may have already

13   occurred but if someone could just write down my name,

14   phone number, and email address so we can at least start

15   CorrLinks with me and just give it to him on a piece of

16   paper.  And Domenick, I'm going to come see you, I think,

17   either Thursday or Friday.

18   DEFENDANT RICCIARDO:  Okay.

19   THE COURT:  Mr. Chin, is that something you're

20   able to provide to Mr. Ricciardo?

21   THE CLERK:  Yes.  I can pull it off Mr.

22   Caliendo's email.

23   MR. CALIENDO:  And Judge I would waive any

24   formal *Brady* recitation, I've heard it many times today,

25   I've heard it many times in the past.  It will be on the

Proceedings

1    docket.  The Court should not feel compelled to give the

2    speech again on our behalf.

3              THE COURT:  Ms. Louis-Jeune, do you concur?

4              MS. LOUIS-JEUNE:  Yes, your Honor.  I would

5    just also ask for a medical order for Mr. Castellazzo.

6              THE COURT:  What should it say?

7              MS. LOUIS-JEUNE:  He takes several medications.

8    I believe he would be able to give the information to the

9    MDC.

10             THE COURT:  Mr. Castellazzo, are you able to

11   tell the MDC doctors what you take?

12             DEFENDANT CASTELLAZZO:  Yes.

13             THE COURT:  Mr. Castellazzo said yes.

14   So we will enter a medical memo directing the MDC to

15   promptly evaluate Mr. Castellazzo and prescribe the

16   appropriate medications consistent with their formulary

17   as to anything that he needs.

18             Is that something we can do tonight, Mr. Chin?

19   Or it will be first thing in the morning?

20             THE CLERK:  It will be first thing in the

21   morning.

22             DEFENDANT CASTELLAZZO:  Thank you.

23             THE COURT:  MDC won't get it until first thing

24   in the morning, anyway.

25             So I am going to -- I'm not going into the

1   formal *Brady* warning, I just note for the defendants'

2   benefit that the government has been advised that they

3   required under law to provide to you any and all evidence

4   that is good for you, evidence that is exculpatory.  And

5   they have repeatedly advised they understand their

6   obligations in this case.  I will also be entering a

7   written order on the docket directing them of their

8   obligations to provide any evidence that they have that

9   might help to support your side of the story, not their

10  side of the story.

11          Mr. Ricciardo is nodding.  And with that I

12  think there is nothing further.

13          Ms. Lash, is there anything further from the

14  government?

15          MS. LASH:  No, your Honor.

16          THE COURT:  Mr. Caliendo, anything further on

17  behalf of Mr. Ricciardo?

18          MR. CALIENDO:  No.

19          THE COURT:  Ms. Louis-Jeune, anything further

20  on behalf of Mr. Castellazzo?

21          MS. LOUIS-JEUNE:  No, your Honor.

22          THE COURT:  Okay.  With that we are adjourned.

23  Thank you all for staying so late.  I appreciate it.

24                  (Matter concluded)

25                      -oOo-

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **28th** day of **September**, 2021.



**Transcriptions Plus II, Inc.**