

U.S. Department of Justice

United States Attorney
Eastern District of New York

KDE:JPM/DEL

271 Cadman Plaza East
Brooklyn, New York 11201

October 13, 2021

<u>By ECF and E-mail</u>

The Honorable Sanket J. Bulsara
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   <u>United States v. Benjamin Castellazzo
              Criminal Docket No. 21-466 (ARR)</u>

Dear Judge Bulsara:

      The government respectfully submits this letter in response to defendant Benjamin Castellazzo's letter dated October 12, 2021 ("Def. Letter") and in opposition to Castellazzo's application for release pending trial. Castellazzo was arrested on September 14, 2021, on an Indictment charging him with racketeering, in violation of 18 U.S.C. § 1962(c) (Count One); Hobbs Act extortion conspiracy, in violation of 18 U.S.C. § 1951(a) (Count Two); Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a) (Count Three); Hobbs Act extortion conspiracy, in violation of 18 U.S.C. § 1951(a) (Count Four); attempted Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a) (Count Five); money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Thirteen); conspiracy to steal and embezzle from health care benefit funds, in violation of 18 U.S.C. § 371 (Count Fourteen); health care fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count Fifteen); and attempted health care fraud, in violation of 18 U.S.C. § 1347 (Count Sixteen). Castellazzo is the underboss, or second-in-command, of the Colombo organized crime family of La Cosa Nostra.

      On September 14, 2021, the government submitted a detention memorandum, <u>see</u> ECF No. 20, and following his arraignment and a contested detention hearing, Castellazzo was ordered detained by the Honorable Taryn A. Merkl, United States Magistrate Judge, Eastern District of New York. As outlined in the original detention letter and herein, Castellazzo's application should be denied because all of the factors listed in the Bail Reform Act weigh heavily towards his detention.

In his letter, Castellazzo mistakenly argues that he is not eligible for detention under the Bail Reform Act, 18 U.S.C. § 3141 et seq. As explained in the government's detention memorandum (ECF 20 at 29 n.6), as noted in the prior detention hearing on September 14, 2021 (Transcript, Def. Letter Attachment A at 29:18-19), and as mentioned in the defendant's letter (see Def. Letter at 5), Castellazzo is charged with several counts of extortion and conspiracy to commit the same, which are crimes of violence under the Bail Reform Act. Castellazzo's argument that extortion is not a crime of violence for bail purposes misconstrues the holding in United States v. Davis, 139 S. Ct. 2319 (2019), and fails to account for binding Second Circuit precedent addressing the definition of a crime of violence in the bail context.

The Bail Reform Act provides that the Court shall hold a detention hearing "to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . in a case that involves . . . a crime of violence."[1] 18 U.S.C. § 3142(f). As relevant here, the Bail Reform Act defines "crime of violence" in two ways: first, as an offense that "has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," and second, as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(A), (B).

Castellazzo argues that extortion and extortion conspiracy do not qualify as crimes of violence under the second prong. See Def. Letter at 5. (In support, the defendant only cites a 1998 D.C. Circuit decision regarding the definition of a crime of violence for sentencing purposes, which was later abrogated by the holding in Davis, 139 S. Ct. 2319.) However, the Second Circuit, subsequent to Davis, has held that the Bail Reform Act's definition of a crime of violence was not subject to vagueness challenges and, thus, valid, in the context of the government's entitlement to a detention hearing. See United States v. Watkins, 940 F.3d 152, 167 (2d Cir. 2019). The Watkins Court explained that the Bail Reform Act "does not define criminal offenses, fix penalties, or implicate the dual concerns [of fair notice and preventing arbitrary enforcement] underlying the void-for-vagueness doctrine, it is not amenable to a due process challenge and is therefore not unconstitutionally vague." Id. at 161; see also United States v. Bush, No. 18-CR-00907-PAC, 2021 WL 371782, at *2 (S.D.N.Y. Feb. 3, 2021), appeal dismissed sub nom. United States v. Johnson, No. 21-199, 2021 WL 1811527 (2d Cir. May 4, 2021). Thus, even crimes that do not qualify as "crimes of violence" for purpose of sentencing enhancements, such as firearms

---

[1] Eligibility for a detention hearing is also found when there is "a serious risk that such person will flee; or . . . a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f). In its September 14, 2021 detention memorandum, the government argued because of the significant sentences the defendants face at their advanced age, there is a risk that the defendants will flee.

possession, remain crimes of violence for purposes of bail considerations. See, e.g., United States v. Todd, 12-CR-45 (RJS), 2020 WL 1974219, at *1 (S.D.N.Y. Apr. 24, 2020) (finding while conspiracy to commit Hobbs Act robbery was not a "crime of violence" under Section 924(c) following Davis; it remained a crime of violence under the Bail Reform Act).

   Accordingly, Hobbs Act extortion and conspiracy to commit the same qualify as crimes of violence under the Bail Reform Act. The statute makes it an offense to "obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in commerce, by . . . extortion." 18 U.S.C. 1951(a). The term "extortion" means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Id. § 1951(b)(2). Such a determination has long been the law of this Circuit. United States v. Ciccone, 312 F.3d 535, 542 (2d Cir. 2002) ("Certainly, it cannot be gainsaid that extortion is a "crime of violence" as that term is defined by the [Bail Reform Act]."); United States v. Santora, 225 F. App'x 21, 22 (2d Cir. 2007) (upholding district court's finding for pretrial detention purposes that defendant "had committed a crime of violence, specifically conspiracy to commit extortion" (citing 18 U.S.C. § 3142(e); Ciccone, 312 F.3d at 541)) (unpublished decision). As a district court noted in United States v. Gotti:

> Turning first to defendant's argument that he is not charged with a crime of violence and therefore cannot be detained on grounds of dangerousness, it is clear from the indictment that Peter Gotti is charged with being the Acting Boss of the Gambino crime family, responsible for controlling the activities of the racketeering enterprise, and conspiring with the members of the organization to engage in the various acts charged in the indictment. Included among these predicate acts are numerous acts of extortion, which by its very nature is considered to be an act of violence under the Bail Reform Act, in that threats of force and intimidation are used to collect monies and to force others to engage in acts in response to those threats.

No. 02 CR 606 (ILG), 2002 WL 31946775, at *5 (E.D.N.Y. June 10, 2002) (citing United States v. Defede, 7 F. Supp. 2d 390, 396 (noting that "[t]he offense, extortion, is a crime of violence both because it is so defined by statute and because its completion often involves the threat of physical harm")).

   Therefore, despite the defendant's contentions, the government is entitled to a detention hearing under the Bail Reform Act, as Castellazzo is charged with crimes of violence under the Bail Reform Act. In addition, all other factors enumerated in the Bail Reform Act weigh in favor of Castellazzo's detention, including the weight of the evidence against him, his history and characteristics and the danger his release would pose to members of the community.

As to the substance of his claims, the defendant's letter relies on a faulty premise that a man of Castellazzo's age cannot pose a danger to the community or to witnesses and victims in this case. This argument ignores both his senior role in a violent criminal organization (and his ability to act through underlings) and the defendant's significant criminal history. The latter includes a recent conviction (at the age of 75) in 2013 in this District. There, the Honorable Kiyo A. Matsumoto, United States District Judge, sentenced Castellazzo to 63 months' imprisonment, following his plea to racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). During the prior case, as is alleged here, the defendant rose to the position of underboss in the Colombo crime family. There, as here, he directly oversaw and profited from crimes that depended on violence and threats for their completion. The proposed bail package, which would release the defendant with no effective means of monitoring his ability to supervise or communicate with others in the Colombo crime family, would return a member of the organization's senior leadership to a circumstance where he could continue to oversee the criminal activities of the organization.

The defendant's letter also makes various references to Castellazzo's health and the putative risks he faces from incarceration. The application provides no specifics as to why the Bureau of Prisons cannot treat the very common health conditions affecting the defendant. Moreover, it contains no specific allegations about any medical need of the defendant's that has not been met. As the charged conduct here shows, given the defendant's position as underboss of the Colombo crime family, his various chronic health conditions have not prevented (and would not prevent) him from committing more crimes in the future — as his history and characteristics make clear he will — because he can direct others to carry out crimes and pay him the proceeds of those crimes. Indeed, he cited his health as a factor when Judge Glasser sentenced him in 2002. (United States v. Castellazzo, 00 CR 840 (ILG) (E.D.N.Y.), Transcript of Sentencing dated February 27, 2002 ("2002 Stg. Tr.") (attached as Ex. A, at 4). Clearly, his age has not preventing him from committing additional federal crimes.

Finally, the contention that the defendant is "not technologically savvy" and that any concerns about dangerousness can be addressed through "home detention, electronic monitoring or on-site visual surveillance" poses several concerns. It principally runs afoul of the precedent in the Second Circuit against reconstructing the conditions of confinement in a non-custodial context, and rejecting "elaborate" bail packages for dangerous defendants, including members of organized crime families shown to be involved in violent criminal activities. See Ferranti, 66 F.3d at 543-44 (rejecting $1 million bail secured by real property); United States v. Orena, 986 F.2d 628, 630-33 (2d Cir. 1993) (rejecting $3 million bail secured with real property, in-home detention, restricted visitation and telephone calls, and electronic monitoring); Colombo, 777 F.2d at 97, 100 (rejecting, among other conditions of release, $500,000 bail secured by real property); see also United States v. Boustani, 932 F.3d 79 (2d Cir. 2019) (holding that Bail Reform Act does not permit two-tiered bail systems where wealthy defendants are effectively released to self-funded private jails). The defendant notes he does not possess a "smartphone" — he does possess a cell phone on which he can make and receive calls. To be sure, the issue is whether the defendant has the means to use others to carry out nefarious acts. Notably, within days following his arrest, the

4

defendant was already contacting individuals by telephone to apparently remove items from his apartment, destroy his cell phone and take other actions. For example, as captured on a recorded call made from the Metropolitan Detention Center, on September 17, 2021, the defendant told an unknown female to direct a member of the defendant's family to pass a message to other members of the Colombo crime family at a garage located in the Gravesend section of Brooklyn, where many meetings in regarding the charged scheme occurred during the course of the government's investigation.

> CASTELLZZO:   Give it to [name], tell him to get in touch with my friend [name], okay? And for him, to tell somebody in the garage, he'll know what I'm talking about, to send me money, they gotta do it through western union...and tell him, to ah, did he do everything that I told him to do?

In a monitored call on September 20, 2021, the defendant directed another unknown female to meet with the same member of the Colombo crime family on his behalf. And in another call on September 20, with a member of his family ("UM-1"), the defendant directed the family member to remove items from his apartment and to throw away his cell phone.

> CASTELLAZZO:   Did you find what you had to find?
> ...
> CASTELLAZZO:   No, but what I'm saying, did you?
> UM-1:          Yea, that I took yea.
> CASTELLAZZO:   Oh, okay, all right that's what I'm talking about, ha, all right, okay.
> Family Member: Yea, yea, they, ha, like I said, yup, I got it.
>
> CASTELLAZZO:   . . . with my cellphone, when you get it, just throw it away.

In short, the defendant has the capabilities to direct (and clearly has directed) others to take actions for him. He is aware of the identities of many of the witnesses and victims in this case and has a powerful incentive to thwart or prevent their testimony and continued assistance. His release on the conditions proposed would return him to a situation where had both the authority and opportunity to continue in his leadership of the Colombo family.

   For the reasons set forth above and in the government's detention memo dated September 14, 2021 (ECF 20), the government respectfully requests that the Court enter a permanent order of detention with respect to Benjamin Castellazzo.

                Respectfully submitted,

                JAQUELYN M. KASULIS
                Acting United States Attorney

By:   /s/
    James P. McDonald
    Devon Lash
    Assistant U.S. Attorneys
    (718) 254-7000

cc:  Clerk of Court (ARR) (SJB) (by ECF)
    Jennifer Louis-Jeune, Esq. (Counsel for the defendant) (by ECF)