# JLJ LAW

**Law Office of Jennifer R. Louis-Jeune**

Jennifer R. Louis-Jeune
Kestine Thiele

52 Duane Street, Floor 7
New York, New York 10007
T: 212. 203. 9058
F: 914. 219. 0958
JENNIFER@JLJLAW.COM
KESTINE@JLJLAW.COM

March 2, 2022

**By Email and ECF**
Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Russo, et al.*, 21 Cr. 466 (DG)

Dear Judge Gujarati:

    We represent Mr. Benjamin Castellazzo in the above-referenced matter, having been appointed as counsel pursuant to the provisions of the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, on September 14, 2021. We write to respectfully renew our request for Mr. Castellazzo's release. At the time of Mr. Castellazzo's arrest and presentment on September 14, 2021, we made a bail application, which Magistrate Judge Merkel denied without prejudice. On October 14, 2021, we made another bail application, which was also denied without prejudice by Magistrate Judge Bulsara.

    Mr. Castellazzo's time at the Metropolitan Detention Center ("MDC") since his arrest in this case has been nothing short of inhumane. As the Court is aware, the recent conditions of confinement at MDC have been, in Judge Bulsara's words, so "horrific, horrendous, despicable, [and] untenable," that the fact that our country's criminal legal system subjects any pretrial defendant, or any human, to them should shock the conscience. Exhibit A, Transcript from Bail Hearing on Oct. 14, 2021. Putting aside his inability to review discovery and meaningfully participate in the preparation of his defense case, Mr. Castellazzo has had to endure dangerous exposure to COVID-19 and its variants, flooding toilets, frozen food, blackouts, broken call buttons, inadequate medical attention, late prescription deliveries, no commissary, limited access to phones, violence, drugs, and 23-hour-a-day lockdowns. ███████████████████
███████████████████████████████████████████████████████████████████████████

    Mr. Castellazzo is not a danger to the community and poses no flight risk. There is simply no weight to the government's evidence in this case. And given that a majority of Mr.

Castellazzo's co-defendants have been released under a set of bail conditions, the government cannot establish by clear and convincing evidence that *no* conditions or combination of conditions will reasonably assure the safety of the community, as required by 18 U.S.C. §§ 3142(e) and 3142(i)(1). Mr. Castellazzo should be released immediately pending trial with conditions this Court deems appropriate, under §§ 3142(a)–(c).

I.  Mr. Castellazzo's ▮▮▮▮



Mr. Castellazzo also shared that after he first became privy to the diagnosis in early February, MDC medical made clear during his appointment that they could not care for him at the facility—that they did not have the appropriate resources to further monitor or treat the ▮▮▮▮ and that he would have to go to an outside hospital. Mr. Castellazzo was told he would be transported to a hospital on Monday, February 7. On Monday, February 7, MDC failed to take him to see a doctor. On Tuesday, March 1, Mr. Castellazzo visited a hospital, for the first time since the diagnosis, for an appointment during which his toenails were clipped, but no attention was paid to his ▮▮▮▮. He did not undergo any tests, he had no discussion with a professional about the issue, and he was given no medication.

We acknowledge that COVID slowed the BOP's ability to book procedures and provide transportation, and doctors have been called into different medical roles. However, COVID does not account for the lack of care and information Mr. Castellazzo has received. He is an 84-

year-old man ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even if MDC were capable of transporting Mr. Castellazzo to an outside hospital on a schedule necessary for the treatment for this infection, which it has already proven it cannot, just the process of transportation for Mr. Castellazzo puts an enormous strain on his physical health. Not only is Mr. Castellazzo potentially exposed to COVID-19 during any travel outside of the facility, the stress of being shackled to a bed puts his health at even further risk. He should not be forced to manage his chronic health conditions in a facility that cannot effectively communicate with him, treat him, or transport him to health professionals qualified and equipped to care for him. As Dr. Weber recommends in his declaration, due to Mr. Castellazzo's advanced age and medical problems, the Court should consider alternatives to incarceration that would allow Mr. Castellazzo to seek out the medical care he needs. *See id.*

## II.   Mr. Castellazzo Has Had No Access to Discovery Since His Arrest

A detention facility violates the Sixth Amendment when it "unreasonabl[y] interfere[s] with the accused person's ability to consult counsel." (*Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001)). In *Benjamin*, the Second Circuit held that New York City correctional facilities violated the right to counsel when defense attorneys "routinely face[d] unpredictable, substantial delays in meeting with clients" and were "forced to wait between 45 minutes and two hours, or even substantially longer, after arriving at a facility to see a client. (264 F.3d at 179). Yet, the circumstances and conditions contemplated by the Second Circuit in *Benjamin* pale in comparison to those that Mr. Castellazzo has been forced to endure.

On numerous occasions, defense counsel has scheduled videoconferences and phone calls with Mr. Castellazzo, only for them to be cancelled, shortened, or moved to times during which counsel was unavailable. On two occasions, counsel has not been able to enter the East Building, where Mr. Castellazzo is housed, during legal visiting hours, because staff was not present at the front desk. On other occasions, during which counsel has successfully met with Mr. Castellazzo, we have had to wait at *least* an hour for Mr. Castellazzo to arrive at the visiting area. Perhaps, most notably, for about six weeks from the end of last year to the beginning of this year, MDC did not allow in-person legal visits at all. Ultimately, Mr. Castellazzo has been deprived of privileged conversation with counsel.

Of equally great concern is the fact that Mr. Castellazzo has suffered a complete inability to review the discovery that has been produced. Thus far, the government has produced 7 sets of discovery, yet has failed to ensure that that discovery is available for Mr. Castellazzo in MDC's East Building. The government started producing discovery in late October. Twice in November, defense counsel attempted to confirm with the government that they would produce any materials not under the protective order directly to our client at MDC. After following up with Mr. Castellazzo in December, it came to our attention that he had not received or reviewed

Law Office of Jennifer R. Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958

any discovery. In January, during further discussion between the parties, the government told defense counsel that it had produced discovery to the MDC's law library. In a follow up call with Mr. Castellazzo, he told defense counsel that he did not have access to the law library, and that he did not think any discovery drives had been shared with the East Building. Mr. Castellazzo does not have access to the law library in the West Building, which has a much larger population. It has been over a month, and the government has not yet responded to our request to check with the East Building.

Although the government seems to lack any evidence against Mr. Castellazzo in this case, the review of the discovery is invariably necessary to mounting a defense. As his case progresses, defense counsel has no assurances that he will be able to access and review his discovery in a more consistent or meaningful manner, or that we will have practical means for reviewing it with him, since the type of files necessary to review in this case are not sharable via videoconference, and expecting an 84-year-old man in poor health, who struggles to see and hear, to sit in-person with counsel for hours on end, leaning in towards the screen and speakers of a laptop, is unrealistic and unworkable. Should Mr. Castellazzo be released, he can convene with his attorneys to discuss his case any day, 7 days a week in a comfortable setting that does not put his physical or mental health at risk.

### III. Mr. Castellazzo Is Not a Flight Risk and Does Not Pose a Danger to the Community

The federal Bail Reform Act (the "BRA") presumes that defendants charged with crimes will be released. 18 U.S.C. § 3142(b). As recognized by the Supreme Court, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987); *see also United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. N. 98-225 at 7 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3189 ("Under the federal statutory scheme, "it is only a 'limited group of offenders' who should be [detained] pending trial").

Defense counsel maintains, as argued in our first bail application, that the crimes with which Mr. Castellazzo is charged do not provide a basis for detention under the Bail Reform Act (BRA). ECF No. 102. In fact, they do not provide a basis for a detention *hearing* under the BRA. Supreme Court precedent makes it unconstitutional for a court to hold a detention hearing or detain a defendant at all when, as here, there is no basis for detention under 18 U.S.C. § 3142(f). Because Mr. Castellazzo is not charged with an enumerated offense under § 3142(f)(1), and the government has failed to proffer any evidence that there is a "*serious risk* that [Mr. Castellazzo] will flee" or obstruct justice, Mr. Castellazzo is being detained in violation of the law. § 3142(f)(2)(A) (emphasis added). However, assuming *arguendo*, for the purpose of this application, that this is a presumption case where an (f) factor is present, the government still must establish by clear and convincing evidence that *no* conditions or combination of conditions will reasonably assure the safety of the community. At this point, they simply cannot do so.

Neither Judge Merkel nor Judge Bulsara found that Mr. Castellazzo was a serious risk of flight. Pretrial Services found that he posed a risk of nonappearance because of a "history of

Law Office of Jennifer R Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958

parole violation[s]," but that assessment was based in part on a parole violation from 1968. According to his record, Mr. Castellazzo has appeared in court on every occasion in the last 50 years. There is simply no factual support that Mr. Castellazzo is a risk of flight, let alone a *serious* risk of flight, as required under the BRA.

As to the need to protect the community, the Court should find that in light of Mr. Castellazzo's illnesses and new ███████████████ and the available conditions of home confinement, his release would not pose a danger to the community. Upon release, Mr. Castellazzo could be subject to home detention and close monitoring. If he failed to comply with any condition of release, he could face further imprisonment. This is a further deterrent to criminal conduct and motivation because Mr. Castellazzo would know that noncompliance would land him back in the same position he is in now, unable to meaningfully prepare his defense case and care for his myriad health issues.

In the government's submission in opposition to Mr. Castellazzo's last application for bail, it suggested that Mr. Castellazzo has the capabilities to and "clearly has directed" others to take criminal actions for him. ECF No. 104 at 5. The government and ultimately Judge Bulsara relied heavily on a recorded MDC phone call between Mr. Castellazzo and his son on September 20, 2021. Judge Bulsara told defense counsel, "I would suggest that if the [call] that your client had on September 20th is not as it is indicated by the government, you'll figure out what it is and let the Court know because that directly undermines the premise upon which the bail application is being made…" Exhibit A, 34, 35: 23-25, 1-2. That is what the defense intends to do here. Defense counsel was not provided with full recordings of the audio the government relied on at the bail hearing on October 14, 2021 until October 18, 2021.

The government's wildly speculative interpretation of the call was that Mr. Castellazzo "directed [his] family member to remove items from his apartment and to throw away his cell phone." *Id.* This characterization is flatly untrue. As was the case with the first recorded call referenced by the government, Mr. Castellazzo was taking care of his affairs after his arrest. The government insinuated that it did not know the identity of the second speaker, calling him a "family member," but Mr. Castellazzo addresses the speaker as "son" numerous times. In listening to the entirety of the September 20 phone call, not just relying on the snippets of the conversation presented by the government, and speaking with Mr. Castellazzo and his son, it became clear that Mr. Castellazzo was just making sure nothing valuable like car keys and cash were left in his unlocked apartment. At one point, his son says, "I took out, you know, your jewelry, stuff like that," to which Mr. Castellazzo responds, "Even the chains and all that. I think I left money…too." Mr. Castellazzo also joked with his son, asking if his dress suits and jogging suits fit him. This part of the call was intentionally left out of the government's submission, as was critical context about the cell phone, which the government implied Mr. Castellazzo was trying to "keep [] away from the government." Exhibit A, 25: 4-5.

The Federal Bureau of Investigation seized a cell phone from Mr. Castellazzo or his residence and returned it to him and defense counsel at the arraignment on September 14, 2021. On the September 20 call, Mr. Castellazzo states, "They gave me the key back with my cell phone, and I gave it to the lawyer…She has it, so if you want to call her…when you get it, just

throw it away. I'm not interested in that cell phone." Mr. Castellazzo and his son were not plotting to ensure the government did not gain access to its contents. Mr. Castellazzo was telling his son how to obtain his property from defense counsel. It can only be presumed that the FBI had no investigative use for the phone, which defense counsel is still in possession of. There is simply no basis to suggest Mr. Castellazzo was directing criminal activity, and it should be highlighted that Mr. Castellazzo's son is not named in this indictment or involved in any related case. There is no reason to believe he was helping his father in any wrongdoing, or that Mr. Castellazzo was asking him to participate in any wrongdoing. Perhaps the government's transcription of this call, which contained cherry-picked quotes and left out necessary context, "evinces a guilty conscience," but a true, complete transcript does not. *Id.*

This Court should not rely on the government's gross misrepresentation of that recorded call. There is no support for a finding of present dangerousness in this case. To allay any concerns the Court may still have, there are conditions that can be put in place to prevent Mr. Castellazzo from having a telephone or any other means of communication. Mr. Castellazzo has not had any infractions while incarcerated and has not engaged in any sort of criminal activity over the phone. On October 27, 2021, the Court released defendant Andrew Russo, and as conditions of the bond, Mr. Russo was confined to his home with electronic monitoring, the family agreed to reduce the number of electronic devices on the premises with the remaining devices subject to monitoring by Pretrial Services, and visitors would be approved by the government in advance. If home detention and this set of conditions can reasonably assure the safety of the community, as required by 18 U.S.C. §§ 3142(e) and 3142(i)(1), in Mr. Russo's case, the same *must* be true for Mr. Castellazzo. After Mr. Russo's release, along with the release of eight other defendants named on this indictment, the government has no plausible arguments to establish by clear and convincing evidence that *no* conditions will reasonably assure that Mr. Castellazzo does not use a phone to continue to engage in criminal activity.

As stated in our first bail motion, the government suggested in its detention memo that it would rely on thousands of hours of wiretap interceptions and consensual recordings by a confidential witness at detention hearings in this case. ECF No. 20, n.5. At the last bail hearing, Judge Bulsara stated, "But the government alleges, and I haven't heard a rebuttal, that at that meeting extortion and racketeering schemes were enacted and followed through on. So it's not just have a dinner meeting with someone. So I take the Government's charges are being more serious." Exhibit A, 30: 3-8. Although Mr. Castellazzo has no legal obligation to rebut the government's allegations, he affirmatively denies all charges pending against him. More importantly, the evidence does not support Mr. Castellazzo's involvement in any extortion or racketeering schemes. Presence at a meeting is not involvement. And in reviewing hours of recorded phone conversations and pages of line sheets, defense counsel struggled to find any connections between our client and the Rule 16 discovery so far produced. In a subsequent conversation with government, we found that it does not have a single recording of Mr. Castellazzo's voice, and that its entire case against our client rests on Mr. Castellazzo's alleged position in the family, presence at two "meetings" in November 2020, and vague references to someone the government believes to be Mr. Castellazzo made by others on recorded lines. Even after asking the government to point out key words and productions of discovery specific to Mr.

6

Law Office of Jennifer R Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958

Castellazzo, defense counsel has yet to find those references in the discovery. The evidence against Mr. Castellazzo is not just weak, it is non-existent.

**IV. Proposed Bail Conditions**

At the bail hearing on October 14, 2021, Judge Bulsara stated, "Judge Merkl did say that a substantial package could be provided…$150,000 package secured by two suretors is not anywhere close to what a substantial package would be given the amount of time your client is facing in jail and what the proffers of the weight of the evidence and his substantial criminal history." Exhibit A, 29: 6-12. Today, we are confident that any concerns about danger if Mr. Castellazzo were released can be more than adequately addressed through these proposed restrictive release conditions, mirroring those of co-defendant Andrew Russo. With the government's and the Court's anticipated concerns in mind, we present the following proposed release conditions:

a. $3,100,000 personal recognizance bond, secured by various properties and executed by 6 financially responsible persons;
b. Mr. Castellazzo will remain on home detention with electronic monitoring;
c. Mr. Castellazzo will reside alone at the senior living center at which he was living at his time of arrest at 312 East Bay Ave. #209, Manahawkin, NJ 08050;
d. Mr. Castellazzo will maintain one non-smart cell phone or landline subject to monitoring by Pretrial Services and the government;
e. Any visitors to the premises must be approved by Pretrial Services and the government in advance;
f. Mr. Castellazzo will not have any contact with co-defendants in this Case outside the presence of counsel; and
g. Any other conditions the Court deems appropriate.

**V. Conclusion**

Mr. Castellazzo's age and medical conditions obviate any legitimate concerns that he is a danger to others. The Bail Reform Act compels release pending trial. We have no confidence in MDC's ability to care for our client, and if he remains incarcerated, Mr. Castellazzo could face potentially fatal risks, █████████████████████████████████████. The government's weak generalities about Mr. Castellazzo's alleged power and reach, even on home detention, as an alleged high-ranking member of the "Colombo crime family," fail to meet the legal standard necessary to establish that *no* set of conditions on bail could reasonably assure the safety of the community under § 3142(i)(1). Mr. Castellazzo can and should be released, as many of his co-defendants have been, to allow him the strength to fight the case against him and unfettered access to healthcare that could save him from severe medical complications, and potentially death.

7

Law Office of Jennifer R Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958

For the aforementioned reasons, Mr. Castellazzo respectfully requests that he be released pending trial with conditions this Court deems appropriate, under §§ 3142(a)–(c). We thank the Court, as always, for its consideration.

Respectfully submitted,

/s/

Jennifer R. Louis-Jeune
Kestine M. Thiele

Law Office of Jennifer R Louis-Jeune | 52 Duane Street, Floor 7 | New York, New York 10007 | T: 212 203 9058 | F: 914 219 0958