

*Ilana Haramati*
*Partner*
Direct (646) 860-3130
Fax (212) 655-3535
ih@msf-law.com

January 3, 2024

**VIA ECF**

Hon. Hector Gonzalez
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Courtroom 6A S
Brooklyn, NY  11201

      Re:    *United States v. Benjamin Castellazzo*, 21-CR-466 (HG)

Dear Judge Gonzalez,

      Michael Marinaccio and I represent defendant Benjamin Castellazzo in the above-referenced case. We write in advance of Mr. Castellazzo's January 22, 2024 sentencing to respectfully request that the Court impose a below-Guidelines sentence.

      Mr. Castellazzo is an 86 year old ▮▮▮▮▮▮▮▮▮▮ Mr. Castellazzo's long term care cannot be entrusted to the BOP—the BOP's recent track record caring for sick and elderly inmates is nothing short of appalling. *See, e.g.,* Ex. A, *United States v. Young*, 23-cr-475 (DLI), Tr. 5:10-11 (Dec. 20, 2023 E.D.N.Y.) (considering whether to hold the MDC in contempt for failing to follow a court order to transfer inmate to a medical facility for long term treatment, and describing the facility's failure to provide medical care "contemptuous of human life and dignity . . . appalling," and "unprofessional.").

      While Mr. Castellazzo readily accepts responsibility for his criminal conviction, a Guidelines sentence would simply be too harsh a punishment for an old man with substantial health concerns. The sentencing statute itself directs the Court to consider a defendant's need for "medical care" when imposing sentence. 18 U.S.C. § 3553(a)(2)(D). For Mr. Castellazzo, that strongly favors a below-Guidelines sentence to ensure that he has an opportunity to seek treatment from his longtime physicians for his persistent medical conditions.

**I.**    **Mr. Castellazzo's Plea Agreement**

      From the sprawling twenty-one (21) count RICO Indictment, Mr. Castellazzo pled guilty to a single count of money laundering in violation of 18 U.S.C. § 1956. The government

memorialized an estimated sentencing Guideline adjusted offense level of 14. *See* Castellazzo Plea Agr. at 3. Mr. Castellazzo, of course, fulsomely accepts responsibility for his crime, per the plea agreement, and as stated on the record in open court during his July 7, 2023 plea hearing.

While Probation added a two-level enhancement under U.S.S.G. § 2S1.1(b)(2)(B), based on Mr. Castellazzo's money laundering conviction under 18 U.S.C. § 1956, it correctly calculated that Mr. Castellazzo is in Criminal History Category II based on the November 1, 2023 revisions to the Sentencing Guidelines. *See* PSR ¶¶ 188-205. Probation's calculation of the advisory Guidelines results in an adjusted offense level 16, and an advisory Guidelines range of 24-30 months.

Notably, as is clear from the text of the Indictment, the PSR's description of the offense conduct, as well as the plea agreement, while the government alleges that Mr. Castellazzo is a high ranking member of organized crime, his actual role in the criminal activity charged was limited. The offense conduct section in the PSR spans more than forty-five (45) pages, and one hundred eighty-four (184) paragraphs. PSR ¶¶ 1-184. Only eleven (11) of the offense conduct paragraphs relate to Mr. Castellazzo at all—the vast majority address conduct related solely to others, and in which he is not alleged to have participated. The PSR's offense conduct section thus emphasizes Mr. Castellazzo's relatively small active role in the sprawling RICO conspiracy charged.

The government's evidence against Mr. Castellazzo regarding the charged RICO conspiracy was likewise severely limited. There are no recordings of Mr. Castellazzo, although the government collected and produced substantial Title III wiretap recordings. Nor is there otherwise concrete evidence of Mr. Castellazzo's involvement in the broad charges included in the Indictment.

Of course, Mr. Castellazzo accepts full responsibility for his conduct: he pled guilty and is prepared to face the consequences of his money laundering conviction. But in sentencing Mr. Castellazzo, the Court should view his conduct individually, without undue emphasis on the allegations and convictions solely involving the other defendants charged in the sprawling Indictment.

## II.   Mr. Castellazzo Did Not Attempt to Obstruct Justice

Although Probation did not enhance Mr. Castellazzo's advisory Guidelines for obstruction of justice, the PSR suggests that Mr. Castellazzo engaged in obstructive conduct. That is inaccurate.

First, the PSR alleges that:

> The instant investigation revealed through recorded prison phone calls that days after the arrest of Castellazzo, he began contacting individuals by telephone to remove items from his apartment, destroy his cell phone, and take other actions.
>
> . . .

> In a monitored phone call on September 20, 2021, Castellazzo directed another unknown female to meet with the same member of the Colombo crime family on his behalf. And, in another call made that day by Castellazzo to a member of his family, Castellazzo directed the family member to remove items from his apartment and to throw away his cell phone.

PSR ¶¶ 144, 146.  The PSR incorrectly construes these conversations as obstructive.

Mr. Castellazzo was arrested in his home on September 14, 2021.  At the time of his arrest, multiple federal agents entered Mr. Castellazzo' home, and looked through the apartment, ostensibly as part of a protective sweep.  Thereafter, the government made no effort to search his home or obtain any items therein.  The government never sought to search Mr. Castellazzo's apartment, and never applied for or obtained a warrant.  Nor did the government otherwise pursue or request any materials from Mr. Castellazzo's home at any time.  The September 20, 2021 conversation, which was recorded while Mr. Castellazzo was detained at the MDC, and at all times thereafter following his arrest, he was free to do as he wished with his personal property.  Aspersions that he somehow committed obstruction of justice are thus inappropriate.

Mr. Castellazzo also had legitimate motives for donating or disposing of his belongings.  He was just shy of 84 years old upon his arrest, and was initially detained at the Metropolitan Detention Center.  Mr. Castellazzo was uncertain that he would ever return home.  Indeed, Mr. Castellazzo's co-defendant of the same generation, Andrew Russo, died during the pendency of this case.  Accordingly, Mr. Castellazzo instructed his son and family members to donate or dispose of items in his apartment.

The same is true of Mr. Castellazzo's cellular telephone.  By the time of the recorded conversations, the government had seized and returned Mr. Castellazzo's cellular telephone to defense counsel; there was every indication that the government was not interested in its contents as part of the instant case.  At that point, Mr. Castellazzo was thus free to do as he wished with his cellular telephone, including disposing of it.  After all, Mr. Castellazzo did not need his cellular telephone as he was detained at the MDC.  These conversations simply do not support inferences of obstruction.

The PSR also cites a further conversation as allegedly addressing obstruction:

> [A]s captured on a recorded call made from the Metropolitan Detention Center (MDC) in Brooklyn, New York, on September 17, 2021, Castellazzo told an unknown female to direct a member of his family to pass a message to other members of the Colombo crime family at the Avenue U garage, where many meetings regarding the instant offense occurred.

> Castellazzo specifically made the following statement: Give it to [name], tell him to get in touch with my friend [name], okay? And for him, to tell somebody in the garage, he'll know what I'm talking about, to send me money, they gotta do it

through western union...and tell him, to ah, did he do everything that I told him to do?

PSR ¶ 145.  Far from anything nefarious, this conversation shortly after Mr. Castellazzo's arrest relates to arranging for Mr. Castellazzo's commissary at the MDC—one of the few services that still require payment through Western Union.

There is not a whiff of obstruction in any of the conduct alleged as to Mr. Castellazzo.  The Court should view Mr. Castellazzo's conduct accordingly in crafting his sentence.

### III.     Mr. Castellazzo's Ailing Health Warrants a Below-Guidelines Sentence

Section 3553(a) directs that in determining an appropriate sentence, the Court should consider the defendant's necessary "medical care."  18 U.S.C. § 3553(a)(2)(D).  The PSR highlights the very real risk that a lengthy period of incarceration poses to Mr. Castellazzo's health.  Mr. Castellazzo is 86 years old. ███████████████████████████████████████████████████████████████████████ To ensure that Mr. Castellazzo receives the medical care that he needs, the Court should impose a below-Guidelines sentence.



██████████████████████████████████████████████████████████████████████
██████████.[1]

Mr. Castellazzo's healthcare needs have already burdened the BOP, which at this juncture, is plainly not in a position to ensure high quality medical treatment is provided to sick inmates. ██████████████████████████████████████████████████████████████████ BOP medical care has only deteriorated since. As *Forbes* recently reported: "the BOP is struggling to care for prisoners in its care." Walter Pavlo, "Federal Bureau Of Prisons' Medical Care Falls Short Of Its Own Policy," *Forbes* (Apr. 19, 2022).[2] The BOP "has numerous policies and program statements, all meant to set a standard for operations in an agency responsible for the care of 160,000 prisoners," including "a program statement for medical care of prisoners entitled Patient Care," with an "overall goal" of delivering "[h]ealth care . . . to inmates in accordance with proven standards of care without compromising public safety concerns inherent to the agency's overall mission." *Id.* (quotation marks omitted). But the reality of patient care falls far short of the basic standards that the BOP is ostensibly committed to: BOP healthcare "standards are being compromised as a result of staffing shortages that the agency has faced for years now." *Id.*

The result is that inmates with severe medical conditions suffer, and far too many even "die preventable deaths." Meg Anderson, "Lawmakers push for federal prison oversight after reports of inadequate medical care," *NPR* (Dec. 12, 2023).[3] NPR reported extensively on the dire situation at BOP facilities, "detail[ing] numerous accounts of federal prisoners nationwide going without needed medical care. Many waited months or even years for treatment." *Id.* ("to reporting from NPR showing that federal prisoners die from treatable conditions that are not diagnosed or treated in a timely way within the prison system.").

The BOP's recent track record of substandard care for ill and elderly inmates is clear. Whatever punishment Mr. Castellazzo deserves for his crime of conviction, he should not be forced to endure inadequate medical care as an 86-year-old ██████████████████████████. The Court should impose a below-Guidelines sentence accordingly to ensure Mr. Castellazzo has an opportunity have his medical needs tended to upon release.

---

[1] Available at: https://zerocancer.org/stages-and-grades/recurrence. "ZERO Prostate Cancer is the leading national nonprofit with the mission to end prostate cancer and help all who are impacted. ZERO advances research, provides support, and creates solutions to achieve health equity to meet the most critical needs of our community." *See* https://zerocancer.org/our-mission-impact.

[2] Available at: = https://www.forbes.com/sites/walterpavlo/2022/04/19/federal-bureau-of-prisons-medical-care-falls-short-of-its-own-policy/?sh=69ada9c75eab.

[3] Available at: https://www.npr.org/2023/12/12/1218627629/lawmakers-push-for-federal-prison-oversight-after-reports-of-inadequate-medical-.

### IV. Mr. Castellazzo Faces Eviction from his Senior Housing Should He Serve A Lengthy Custodial Sentence

A long custodial sentence would also risk Mr. Castellazzo's eviction from his home. Mr. Castellazzo lives in a subsidized apartment complex in New Jersey ▬▬▬▬▬▬▬. It is a HUD-assisted rental housing program for seniors. Mr. Castellazzo has lived there since 2018, first with his wife, and then alone since her passing. *See* PSR ¶ 222.

As is the case for all tenants in federally subsidized housing, Mr. Castellazzo's continued residence at Stafford by the Bay is contingent upon his consistent occupancy of the apartment unit. Mr. Castellazzo can be evicted from his apartment for a "prolonged absence." *See* New Jersey Department of Community Affairs, "Guide to the Housing Choice Voucher Program," at 11 (2019) (addressing "[a] determination to terminate [a tenant's living] assistance . . . for prolonged absence.").[4]

While Mr. Castellazzo was not evicted during his approximately six month period of pretrial detention earlier in this case, a sentence that exposes him to far more time in custody would risk his eviction. In his late 80s, he would be homeless. Without access to subsidized senior housing, he is unlikely to be able to afford another apartment. *See* PSR ¶ 247 (finding that Mr. Castellazzo's net worth is $5,092). Avoiding such disastrous and destabilizing collateral consequences should be an important factor in the Court's sentencing decision.

We respectfully request that the Court impose a non-Guidelines sentence on Mr. Castellazzo accordingly.

Respectfully Submitted,

/s/

Ilana Haramati
Meister Seelig & Fein PLLC
125 Park Ave., 7th Floor
New York, NY 10017

Michael A. Marinaccio
Law Office of Michael A. Marinaccio
245 Main Street, Suite 420
White Plains, NY 10601

*Counsel for Defendant Benjamin Castellazzo*

---

[4] Available at: https://www.nj.gov/dca/divisions/dhcr/publications/docs/Appendix_D-GUIDE_TO_THE_HCVP_2019.pdf.